# WHITTIER *v.* WHITTIER.

An assignment of part of a husband's estate to his wife, upon a divorce, as alimony, vests the title in her, as the assignment of a bankrupt's estate vests it in the assignee.

If the property assigned is a right of action, she may maintain an action in her own name, but her declaration should show her title as assignee.

If a right under a contract not broken is assigned to her, her declaration should show a breach after the assignment.

If the contract is not otherwise broken, a demand and refusal must be alleged and shown.

A former action, brought and discontinued, is not evidence of a demand and refusal.

THIS is an action for money had and received.

The following state of facts is agreed upon by the parties. Some time in the year 1848, E. Whittier, the father of the defendant, E. Whittier, jr., and then the lawful husband of the plaintiff, was arrested and imprisoned on a criminal process; and at that time had a quantity of money in specie, amounting to $300 or more, which was kept for the said E. Whittier, by the defendant, in his trunk, which was kept in the house of the said E. Whittier.

The defendant retained the money after the arrest, and has converted the same to his own use, except so far as he may have paid out some of it for the benefit of his father, the said E. Whittier. After said arrest, the plaintiff filed a libel for a divorce against the said E. Whittier; and a divorce from the bonds of matrimony was duly decreed by the superior court of judicature, in favor of the plaintiff against the said E. Whittier. The said superior court also decreed alimony in favor of the plaintiff; and among other property of the said E. Whittier, assigned to her all the money belonging to the said E. Whittier, in the hands of E. Whittier, jr., after deducting what he had, in good faith, paid out for him.

Before said decree of alimony, the plaintiff demanded said money of the defendant repeatedly; and after said decree of alimony, and before the bringing of the present suit, the plaintiff brought a suit for money had and received against the defendant, and caused the writ to be duly served upon him, which writ, being returnable in the western judicial district of Grafton county, was abandoned by the plaintiff, on the ground that the court to which it was returnable had no jurisdiction of the parties, all this being before the commencement of the present suit.

It is agreed for the purposes of this case only, that no other or further demand was made than as above stated.

It is agreed by the parties, that if the superior court shall be of opinion that this action can be maintained on the above facts, or if the said superior court shall be of opinion

that the plaintiff can maintain this action, by showing, in addition to the before-mentioned agreed facts, a positive demand upon the defendant by her for the money in dispute, and a refusal by him, after the decree of alimony and before the commencement of this suit, then, in either event, this action is to stand for trial in the common pleas.

But if said superior court are of opinion that the action cannot be maintained, either with or without a positive demand and refusal, after decree and before the commencement of this suit, then the plaintiff is to be nonsuit.

The parties agree to the foregoing statement of facts, for the purpose of raising the question whether or not the action can be maintained in the name of the plaintiff, and for no other purpose.

*Hibbard*, for the plaintiff.

The case finds that previous to this suit, the superior court decreed to the plaintiff " all the money belonging to said E. Whittier, in the hands of E. Whittier, jr., after deducting what he, Elijah, jr., had in good faith paid out for said Elijah."

It is for the recovery of said balance of money that this suit is brought.

The question is, whether the action can be maintained in the name of the plaintiff.

The form of the decree, in this case, was not to order the payment of a certain sum to the wife, as is sometimes done. Such a decree might not, of itself, have given to her the title to any particular property. It assigned to her a specific quantity of money, to wit : " all the money belonging to said Elijah, in the hands of the defendant," meaning and including, as a matter of course, the money kept in the trunk. It was a distinct and particular quantity, certain in amount, or capable of being made certain. The decree passed to her all the right, title and interest in this money, which Elijah Whittier then had. What was that title and

that interest? Not a mere right to sue for and recover the amount by virtue of some contract, nor by virtue of any other thing, but the absolute ownership and possession of the identical money, then in the hands of Elijah jr., for his father. Had it been a claim in favor of said Elijah for money lent, or for work and labor done, or a mere general right to damages, upon a contract of any kind, express or implied, it might have been different. It might then have been a mere chose in action, not in law assignable, and the plaintiff might have been obliged to sue for it in Elijah's name. But that is not this case. The decree transferred to the plaintiff this identical money. It passed the title in the property from the former owner to her. Such, we understand to be the effect of a decree of alimony, both as to personal and real estate. When the property assigned is specific and identified, or capable of being identified, the title passes to the assignee, even in the case of land, without more being done.

The statute conferring upon the court this power is as follows : " Upon any decree of nullity or divorce, the court may restore to the wife all or any part of her lands, tenements or hereditaments, and may assign to her such part of the real and personal estate of her husband, or order him to pay such sum of money as may be deemed just and expedient," &c. Comp. Stat. ch. 157, § 3.

If the court assigns to the wife a particular piece or parcel of the estate of her husband, the title passes to her at once. If an undivided interest in land be assigned to her, her title vests immediately in such undivided part. It becomes separate and distinct, when partition or division is made. She does not require a deed nor a bill of sale from her husband, nor a set off, nor a sale upon execution.

If the court order the husband to pay the wife a sum of money generally, she may need and may take an execution with which to collect it.

The two provisions of the statute, considered in connection

with each other, seem to indicate that one result may fol-low as to the title in the first mentioned case, and a differ-ent one in the latter.

Here the decree puts the plaintiff in the same relation to the money as her husband had sustained. He had placed it in the defendant's hands, to keep for him. The defen-dant was a mere depositary. He had no property in the deposit, either general or special, nor any right to retain it beyond the will of the owner. Story on Bail. 72, 73; 2 Kent's Com. 568. He (Elijah senior) could reclaim it at pleasure. So can she. He could have sued for it in this form of action; or if defendant retained it after demand, or otherwise converted it, could have recovered it in trover, or could have waived the tort and maintained assumpsit. So can she. The defendant having converted the money to his own use, no demand was necessary any more than it would have been in trover. The putting of this money in the defendant's hands was a deposit, and the case is to be governed by the law applicable to other cases of simple deposit.

That no demand is necessary in such case, after a con-version, see Story on Bail. 82.

Nor can the conversion make the defendant's case better, by enabling him to set up his own wrong in his own de-fence.

As to the effect of the decree in substituting the plaintiff for the former owner of the money, and giving his rights and powers to her, see Story on Bail 83, when speaking of analagous cases, he says: " When a deposit is made by a party in a special character, as in the character of guar-dian, or executor, or trustee, there, if the trust has termi-nated, as if the guardianship has ceased, or the executor has been removed, and a new administrator appointed, the de-livery should be to the party entitled of right to the prop-erty. As if an infant has come of age, the delivery should be to him, or, in case of a new administrator, the delivery

should be to him. And the like rule applies where a third person has, by forfeiture or otherwise, succeeded to the right of property, as in case of a forfeiture for crimes, or the subsequent marriage of a feme bailor, or the guardianship of a person who has, since the bailment, become *non compos mentis.* The French law furnishes a similar rule, and, indeed, it is so consonant to common sense, that it would seem to be a principle of universal justice."

The defendant kept the money for his father. His possession was his father's. The father possessed it by his agent. *Qui facit per alium,* &c. Elijah Whittier, then, had not only the property in the money, but the legal possession at the time of the decree. All this passed by the decree by the plaintiff. The defendant had neither property nor possession, at least as against the owner, but only a naked custody. See Story on Bail. 72–75. It comes within the definition of property in possession, as contradistinguished from mere choses in action. 2 Black. Com. 289; 1 Bouv. L. D. 260; 1 Chit. Prac. 99; 2 Black. Com. 397; 1 Ch. Prac. 16.

Were any demand necessary, the bringing of the former suit, as described in the case, would have been sufficient.

*Kittredge,* for the defendant.

The assignment by the court, in this case, was of a chose in action, and not of specific articles. It does not even appear what kind of specie the defendant had, whether of dollars, eagles, or other specie.

It had been converted before the assignment of alimony, and, therefore, could not have been assigned specifically.

The court did not intend to assign specific articles. The form of the assignment shows this, it being of a balance of money. That balance is uncertain, depending upon the amount to be deducted, as paid for defendant's father. Trover, therefore, could not lie.

The assignment, then, being of a chose in action, the

debt can be recovered only in the name of Elijah Whittier. There is no privity between these parties. There is to be an adjustment between the defendant and his father, or an auditing of the accounts before the balance can be ascertained.

The assignment by the court is of no other effect than an assignment by the parties.

The assignment by the court is not a judgment or decree for the payment of a certain sum of money. Had it been, the action should have been on the decree.

A demand was necessary before suit brought.

BELL, J. This case raises the question of the effect of a decree of alimony upon the rights of property of the divorced parties, and of the construction and effect of the decree in the case before us, in the state of facts existing in it, and of the rights of action of the party to whom alimony has been decreed in this case. The statute which confers the power to decree alimony upon this court, is correctly stated in the plaintiff's argument. This power, as it has been construed, and, as we think, it should be construed, is very broad and comprehensive. Their decree, restoring to the wife her property, has been regarded as revesting her estates and property in her alone, as she held them before marriage, and as annulling and cancelling absolutely all right and claim of the husband. Their decree assigning to the wife any part of the estate of her husband has been regarded, in the case of real estate, as divesting the right of the husband, and vesting the entire interest and right in the wife, by the mere force of the decree, constituting her tenant in fee, or for life in ʼpossession, as effectually as the same could be done by any conveyance of the husband himself; in the case of chattels personal, depriving the husband of all his right, and vesting the entire title in them in the wife, as the same had been previously held by the husband; and, in the case of choses in action, divesting the husband's rights of

action, and vesting the same in the wife, with all the reme-dies to which the husband was entitled. Where the hus-band is ordered by a decree to pay a sum of money to the wife, the effect of the decree is not to change the title of any specific property, nor to give to the wife any interest therein, and the order of the court is to be enforced, like any other executory order of the court, by process of execution, or of contempt, as the case may require. It creates a right, like ordinary judgments for debt or damages, in the party recov-ering it, to obtain payment by due process of law. But the case is otherwise where the wife's property is restored, or some of the husband's property is assigned to her. Such a decree is not executory; it is at once, by force of law, fully executed. The property passes by force of the decree. Process may be issued to carry the decree into effect, if it becomes necessary, but such process, like all writs of posses-sion, rest upon the idea that the right of the party to the property has been established and appears of record, so as to entitle the party to ask the aid of the proper officers, to put down any resistance to their rights as thus ascertained.

It is suggested, in the argument for the defendant, and may be regarded, perhaps, as the chief point in the argu-ment, that the operation of an assignment of property by the court, in this case, is the same as that of an assignment by the party, and that it cannot have any greater effect; but, we think, this idea is not supported by the reason of the case, nor by the views of the court, as heretofore understood. The difference is, perhaps, not material, except in cases where rights of action are involved. By the general rules of the common law, choses in action were not transferable by the act of the party, and, in many cases, down to our time, though the equitable right of an assignee is recognized and protected even in courts of law; yet the common law principle is so far regarded that no action can be maintained by the assignee, in his own name, the assignor being, at law, regarded as alone entitled to maintain an action. But

assignments by act of the party were far from being the only modes by which property could be assigned or transferred. There were many cases where property and rights of property were transferred by act of law, and many cases where the choses in action thus transferred, were governed by rules entirely different from those adopted in cases of assignments by the party. The wife's chattels and choses in action are at once by law vested in the husband, and, in many cases, he may at once bring actions in his own name.

The same kinds of property of a person deceased become vested in the administrator, by the legal effect of his appointment, and he may maintain actions in his own name, in all cases, and, in many cases, in his own right, without referring to his representative character.

The estate, which has passed by a decree of the court of probate to an administrator, may be again divested, and vested anew in a new administrator, by a decree of the same court, removing the former, and appointing another, and the administrator, thus newly appointed, is regarded as the representative, not of the administrator, who has been removed, but of the original intestate. He may commence actions in his own name, without referring to his predecessor.

The estate of all kinds of a bankrupt passes by a decree of bankruptcy, and the appointment of an assignee at once transfers the bankrupt's property to the assignee, without any transfer by the bankrupt, and the assignee may maintain any action, in his own name, for the recovery of any property or rights of the bankrupt, which have thus become vested in him.

It is to assignments of this class, and not to assignments made by the party, that, in our judgment, assignments of property as alimony should be compared. And as a beneficial statute like this should be liberally expounded, so as to carry into effect, most fully and completely, the design of the Legislature, we think there can be no doubt that the wife, to whom alimony has been assigned, should be deemed to

Whittier *v.* Whittier.

have the fullest exercise of all the rights allowed by law in any given case, to any class of assignees deriving their titles by acts of the law, and this, we apprehend, has always been so understood in our courts.

In the present case, the assignment was obviously made upon the idea that the money deposited by the father in the care of his son, remained, at the time of the decree, in the possession of the son, with the exception of a part, which had been by him paid out in good faith for the father's use. From the general terms used, it would seem that the precise amount intended to be assigned to the wife was not known; but we think no valid exception can be made to the decree on this account, since the amount could be readily ascertained. It is now suggested that the money intended to be assigned did not remain in fact in the hands of the son, but had been previously converted to his own use, so that the object of the assignment had ceased to exist. If this should prove to be the case, which does not appear by the case to be so, it would be with great reluctance that the court would come to the conclusion that their assignment of alimony had thus been defeated by the unauthorized and wrongful act of a third person, though we think there can be no doubt of the power of the court to supply the defect, by a supplementary decree. The power of the court to assign the husband's right of action for the tortious conversion of this property, is as clear as the right to assign the specific property; and if, on examining the terms of the decree, the language is found suitable to transfer the claim of the husband for the money, as well as the money itself, the court will, without hesitation, give it that construction which, upon the state of facts then shown to exist, will render the decree effectual. Upon such an examination of the terms of this decree, we think the language broad and comprehensive enough to carry all the rights of the husband to this money, as well as the money itself. " All the money in the hands of A.," is a common

expression, not only for the money specifically deposited, but for all rights to recover money, whatever may be the nature of the party's claim.  A bequest of all my money in such a bank, or an assignment in the same terms, we think would not only pass the title to a special deposit, but the title to receive the amount of money deposited generally, which is at once mixed with the funds of the bank, and cannot be reclaimed specifically; but the liability of the bank may be discharged by the payment of any money of equal value.  Indeed, this seems to be the impression of the plaintiff's counsel, when he contends that this assignment ought rather to be regarded as applying to the claim for the money than to the specific property.  We are therefore of the opinion that by the assignment in this case, the specific money referred to, if it then existed as such, was transferred to the plaintiff, and if it had ceased to exist in specie, all the right of the husband to recover the value of the money by action passed to her, and all his remedies, whether by action of debt, assumpsit or trover.

The facts and dates upon which the plaintiff's right to maintain this action depends, do not distinctly appear in the case, and are to be made out by inferences and presumptions, as often happens in agreed cases, where it sometimes seems as if the experiment was to ascertain upon how small an amount of facts a judgment could be obtained.

It is distinctly stated that the money deposited with the defendant, excepting a part properly expended for the depositor's use, has been, at some time not stated, converted to the defendant's use.  Upon the date of this conversion the plaintiff's right of action may, in certain events, and in certain aspects of the case, depend.  If, for example, the conversion occurred after this money was assigned as alimony to the plaintiff, the action, so far as it depends upon the fact of a conversion, is maintainable; and no demand was necessary to be shown, because a demand is material only as evidence of a conversion.

If, however, it appeared that the conversion occurred before the assignment of the money as alimony, the alternative that the action could not be maintained, would not necessarily be true. In the cases of assignments by act of law, it is generally true that the assignee may maintain any action necessary for the recovery of the rights acquired by the assignment, in his own name. The husband may maintain assumpsit for money of the wife received by the defendant before the marriage, in his own name, or in his own and his wife's name. Saund. P. & E. 567; 1 Chitt. Pl. 17.

The executor or administrator may maintain an action of assumpsit for money of the deceased, received by the defendant before his death, in his own name. *Brandon* v. *Pate*, 2 H. B. 310; *Webb* v. *Russell*, 3 D. & E. 393. Or trover for his goods converted before his decease. *Russel's case*, 5 Co. 57; *Rutland* v. *Rutland*, Cro. El. 377; *Snider* v. *Croy*, 2 Johns. 227; *Towle* v. *Leavitt*, 6 Mass. Rep. 395.

And the assignee in bankruptcy may support assumpsit for money of the bankrupt, which came to the defendant's hands before the bankruptcy. 1 Saund. P. & E. 198; *Kitchen* v. *Campbell*, 3 Wilson 307; *Vernon* v. *Hanbury*, 2 D. & E. 113; *Vernon* v. *Anson*, 2 D. & E. 287. And trover lies for the assignee to recover for goods which the defendant has converted to his own use, whether before or after the bankruptcy, or which remain in specie. *Bloxam* v. *Hubbard*, 5 East 407; *Cummings* v. *Roebuck*, Holt's Cases 172; 1 Saund. P. & E. 199.

We are unable to discover any reason why the wife to whom alimony has been assigned, consisting in a right of action for property of the husband, converted by a wrongdoer, may not maintain assumpsit or trover in her own name, to recover the amount of the claim so assigned, which would not apply with equal force in the case of a bankrupt's assignee.

In the cases of the husband, the executor, administrator or assignee, the plaintiff must allege the indebtedness to the

wife, the deceased, or the bankrupt, or the conversion of their property, and by a proper description of his representative character, or other suitable allegations, show his right to maintain the action. 2 Ch. Pl. 49, 51, 55, 325, 326, 328.

And in consistency with the general principles of law, it would be necessary that a wife who should declare in such a case, where the right of action was complete before the assignment of alimony, should allege her character as late wife of her husband, the indebtedness to the husband, or the conversion of the property, pending the marriage, the divorce, and the assignment to her of the husband's right to the property.

In the present case, nothing appears as to the form of the declaration in this respect. Though from the manner in which the case is stated, it would seem probable that the declaration is in the usual general form of a declaration for money had and received, adapted to the case of a debt due to the plaintiff. In a case of doubt like the present, it would seem proper to allege the cause of action in both modes. If that is not done, there would seem no valid objection to an amendment which would obviate any objection for that cause.

A further question arises in this case, in relation to the necessity of a demand by the plaintiff, and the sufficiency of the proof stated in the case to show a demand. In general, no right of action accrues in any case against a depositary, unless there has been some wrongful conversion, or loss by the gross negligence of the bailee, until after a demand made upon him, and a refusal by him to re-deliver the deposit. A demand and refusal is ordinarily evidence of a conversion, unless the circumstances constitute a just excuse or justification of the refusal. Story Bail. § 107. The breach of contract consists in a refusal to return the property, either express or implied. If he still holds the property in a state to be delivered, he cannot be put in the wrong, till a demand is made upon him.

Whittier v. Whittier.

In the present case, if the deposit should be found to be of specific money to be returned in specie, the depositor would have a complete right of action, whenever the depositary should have disabled himself to complete his contract, by a conversion of it to his own use. If the deposit was general, and to be returned only in money of equal value, the property in the money deposited passed at once to the depositary; he had the right to use it for his own purposes, and there could be no wrongful conversion by any such use. But whether the deposit was general or special, if the depositary, upon a demand, or without, should refuse to return the deposit, the contract would be broken, and no further demand could be required. If, then, before the assignment the defendant's contract had been broken in either of these ways, it cannot be necessary for this plaintiff to show any further demand or refusal. But, on the contrary, if the defendant's contract was unbroken at the time of the assignment, the plaintiff must show a subsequent breach, either by a conversion of the property, or by a demand and refusal.

If a demand and refusal should be necessary, the commencement of the former suit hardly seems to us a suitable or sufficient demand. A demand is not the only or the essential thing to be proved. The refusal to perform his duty, as a depositary, is the foundation of the action. A suit is a claim for damages, on the ground that a party has already broken his contract, and not a request to perform. It gives no opportunity for performing it, but, on the contrary, assumes that the day of the performance is passed. It furnishes no evidence beyond the assertion of the party, that the defendant has failed or refused to execute his contract.

The court, then, being of opinion that the plaintiff may maintain this action upon a proper declaration and proof of a demand and refusal of the money, the case must consequently stand for trial, according to the agreement of the parties.