Rockingham
No. 2012-315

CHRISTINA M. DEYESO

v.

JULES R. CAVADI

Argued: February 7, 2013
Opinion Issued: May 14, 2013

*Drummond Woodsum & MacMahon*, of Portsmouth (*Keriann Roman* on the brief and orally), for the petitioner.

*Shaheen & Gordon, PA*, of Dover (*Christine M. Craig* on the brief and orally), for the respondent.

HICKS, J. The petitioner, Christina M. Deyeso, appeals an order of the Superior Court (*McHugh*, J.) denying her petition for a declaratory judgment and injunctive relief, and awarding summary judgment in favor of the respondent, Jules R. Cavadi, permitting the forced sale of Deyeso's home. We reverse and remand.

I

The following facts are drawn from the parties' joint statement of facts or are supported by the record. Deyeso and Stephen Barnes have three children together but never married. Deyeso is currently married to Keith Walsh, with whom she lives in Stratham at a home that she purchased in 1997 (the Property). Cavadi holds a 1991 judgment against Barnes. In September 2004, in a common-law reach and apply action, *see, e.g.,* *Blumenthal v. Blumenthal*, 21 N.E.2d 244, 246-47 (Mass. 1939), he sued Barnes and Deyeso in a Massachusetts trial court, alleging that Barnes paid for certain real estate held in Deyeso's name in Massachusetts and

New Hampshire, including the Property. In October 2009, a Massachusetts superior court found that Barnes had an equitable interest in the Property valued at $94,854, thus entitling Cavadi to an equitable lien on the Property in that amount. Deyeso does not dispute that finding. The fair market value of the Property is $498,500. Two mortgages encumber it, the first totaling $144,808.84 held by Piscataqua Savings Bank, and the second totaling $281,317.75 held by People's United Bank. Cavadi does not contend that Barnes's interest takes priority over the mortgages. After accounting for the mortgages, the equity value remaining in the Property is $72,373.41.

Deyeso appealed the Massachusetts trial court's decision to the Massachusetts Supreme Judicial Court, which upheld the portion of the trial court's order declaring Barnes's interest in the Property to be $94,854. Cavadi then obtained an order in Massachusetts allowing a public auction of the Property to recover the amount of Barnes's interest.

Deyeso instituted this action in superior court in June 2011, seeking a declaratory judgment and injunctive relief to prevent Cavadi from forcing the sale of her home. She claimed that both she and her husband were entitled to homestead protection under RSA 480:1 (Supp. 2012), which, given the prior mortgages, would leave no equity for Cavadi in the event of a forced sale. The parties agree that homestead rights were not at issue in the Massachusetts litigation. In July 2011, the Trial Court (*Smukler*, J.) awarded Deyeso temporary relief, enjoining Cavadi from conducting the auction ordered by the Massachusetts trial court. Cavadi counter-sued and both parties moved for summary judgment. In February 2012, the Trial Court (*McHugh*, J.) ruled in favor of Deyeso, concluding that, although her husband cannot claim the homestead protection due to his lack of ownership, her homestead interest prevails over Cavadi's equitable lien. Cavadi then moved for reconsideration, arguing that the court "did not engage in any analysis or discussion on the equitable issues" he raised on summary judgment, which he contended were sufficient to "negate the homestead protection in this case." Deyeso objected, but the trial court granted Cavadi's motion, concluding that, upon reconsideration, Deyeso's "conduct in this case amounts to fraudulent behavior" and, therefore, permits the court to use "its equitable powers to negate [her] homestead exemption." Deyeso appeals.

## II

Deyeso argues that the trial court erred in concluding that she was not entitled to the homestead exemption under RSA 480:1. She contends that the combined value of the two mortgages on her home and her $100,000 homestead exemption exceeds the value of the home itself, leaving nothing

for Cavadi to collect were a forced sale to proceed. She also argues that the trial court erred in concluding that her husband is not entitled to invoke the homestead protection.

Cavadi does not challenge Deyeso's arithmetic, but contends that the trial court properly ruled that Deyeso was not entitled to the homestead right because: (1) a trial court "may exercise equitable powers to defeat a valid homestead right"; (2) the record supports the trial court's finding of fraud and/or egregious conduct; and (3) the equitable principles of unjust enrichment, unclean hands, and *in pari delicto* defeat Deyeso's homestead claim. Cavadi does not argue that Deyeso's action is barred in its entirety under res judicata principles. He does contend, however, that the Massachusetts trial court's factual findings, including its finding of fraud on the part of Barnes and Deyeso, have preclusive effect. He also argues that Deyeso's husband is not entitled to homestead protection because he has no ownership interest in the Property.

The propriety of awarding equitable relief rests in the sound discretion of the trial court, and we will uphold the court's order unless it constitutes an unsustainable exercise of discretion. *Chase v. Ameriquest Mortgage Co.*, 155 N.H. 19, 24 (2007). The interpretation and application of a statute, such as RSA 480:1, however, presents a question of law, which we review *de novo*. *See, e.g., Town of Hinsdale v. Town of Chesterfield*, 153 N.H. 70, 72 (2005). We also review *de novo* the trial court's application of the law to the facts in its summary judgment ruling. *Concord Gen. Mut. Ins. Co. v. Green & Co. Bldg. & Dev. Corp.*, 160 N.H. 690, 692 (2010). "All evidence presented in the record, as well as any inferences reasonably drawn therefrom, must be considered in the light most favorable to the party opposing summary judgment." *Id.* (quotation omitted). "If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment." *Id.* (quotation omitted).

RSA 480:1 provides that "[e]very person is entitled to $100,000 worth of his or her homestead, or of his or her interest therein, as a homestead." RSA 480:4 (2001) lists four exceptions to the operation of the homestead right: (1) "the collection of taxes"; (2) "the enforcement of liens of mechanics and others for debts created in the construction, repair or improvement of the homestead"; (3) "the enforcement of mortgages which are made a charge thereon according to law"; and (4) "the levy of executions as provided in this chapter."

■ The purpose of the homestead exemption is to secure to debtors and their families the shelter of the homestead roof. *Stewart v. Bader*, 154 N.H. 75, 88 (2006). The exemption "protect[s] the family from destitution, and . . .

protect[s] society from the danger of its citizens becoming paupers." 40 AM. JUR. 2D *Homestead* § 1, at 381-82 (2008). It also "promote[s] the stability and welfare of the state by encouraging property ownership and independence on the part of the citizen." *Id.* § 4, at 385 (footnotes omitted); *see* Comment, *State Homestead Exemption Laws*, 46 YALE L.J. 1023, 1030-31 (1937) ("Another aim of these laws was undoubtedly to protect and encourage home ownership, not only as a stimulus to diligence and high morals, but also as a means of enlisting the individual's self-interest in the preservation of established rights and in the promotion of general prosperity."). Statutory homestead protections are remedial in nature, and to effectuate their public policy objective are "universally held . . . to be liberally construed[;] . . . everything is to be done in advancement of the remedy that can be given consistently with any construction that can be put upon it." *Barney v. Leeds*, 51 N.H. 253, 276 (1871); *see Buxton v. Dearborn*, 46 N.H. 43, 44 (1865) ("[T]he statute should have a liberal interpretation to accomplish the object of the law, which was to leave, for the upholding and support of a debtor's family, a property where they lived not exceeding [the specified amount] in value, that should be exempted from levy and attachment for his debts.").

Cavadi does not contend that any of the RSA 480:4 exceptions applies to defeat Deyeso's homestead claim. Rather, he relies upon our decision in *Chase* to assert a "general rule that where the statutory exemptions to the homestead act *do not apply*, a court may apply equity principles to defeat the homestead if circumstances warrant." The trial court, for its part, reasoned that "the equitable issues raised" in this case are, although not factually analogous, as compelling as those raised in *Chase*.

As Deyeso observes, however, in *Chase* we invoked equitable principles to reach beyond the literal language of the homestead exceptions because there had been "fraud and egregious conduct" in obtaining the funds used to refinance the homestead. *Chase*, 155 N.H. at 26 (noting that forgery had been used to obtain mortgage loan). No such fraud or egregious conduct is present here: notwithstanding Cavadi's allegations, there is no evidence in the record that Barnes wrongfully *obtained* the funds used to invest in Deyeso's home.

Instructive is the court's decision in *Havoco of America, Ltd. v. Hill*, 790 So. 2d 1018 (Fla. 2001), a case we discussed in *Chase*. In that case, Havoco obtained a $15 million judgment against Hill on December 19, 1990, arising out of Hill's efforts to eliminate Havoco from a contract. *Havoco*, 790 So. 2d at 1019. Hill purchased a homestead property on December 30, and the judgment became enforceable on January 2. *Id.* Hill later filed for bankruptcy protection and claimed the property as a homestead exempt from collection by Havoco. *Id.* at 1019-20. The Eleventh Circuit Court of

Appeals certified the following question to the Florida Supreme Court: "Does Article X, Section 4 of the Florida Constitution exempt a Florida homestead, where the debtor acquired the homestead using non-exempt funds with the specific intent of hindering, delaying, or defrauding creditors . . . ?" *Id.* at 1019. After an extensive review of the precedents in which Florida courts allowed equitable liens to defeat the homestead protection, the court in *Havoco* answered that question in the affirmative. *Id.* at 1021-28. Notably, we opined in *Chase* that the Florida Supreme Court's approach to this question "str[ikes] the proper balance between" the purposes of the homestead laws, on the one hand, and established equitable principles on the other. *Chase*, 155 N.H. at 26.

For all relevant purposes, the facts of this case are indistinguishable from those of *Havoco*. Like Hill, Barnes had a judgment against him and used non-exempt funds in the purchase of exempt homestead property. He did so, in the Massachusetts trial court's view, in an effort to "defraud" Cavadi. We note here that the Massachusetts Supreme Judicial Court deemed the trial court's finding of fraud unnecessary in deciding the common-law reach and apply action before it. *Cavadi v. Deyeso*, 941 N.E.2d 23, 37 (Mass. 2011) ("Cavadi's nonstatutory [reach and apply] claim required no proof of a fraudulent conveyance."). Thus, the trial court in this litigation should not have relied upon the Massachusetts trial court's unnecessary factual findings relating to fraud in ruling on Cavadi's motion for summary judgment.

▇▇ Even assuming, however, that Deyeso accepted the money from Barnes with the knowledge that he sought to avoid satisfying his debt to Cavadi, RSA 480:1 protects her homestead interest in the Property. Cavadi does not allege that Barnes obtained the funds through fraud or misconduct. Rather, it appears that, as did Hill in *Havoco*, Barnes used non-exempt funds — *i.e.*, money that would otherwise be subject to attachment by Cavadi — to pay for a homestead. We therefore agree with Deyeso that, in the absence of a showing of fraud, deception, or other misconduct in the *procurement* of the funds used to purchase, invest in, or improve a homestead, *see* 40 AM. JUR. 2D, *supra* § 89, at 472 ("When money fraudulently obtained is used to purchase a home, the homestead exemption is not a shield for the home buyer."), the statutory homestead exemption applies — even when a judgment debtor's funds are so used with the intent of hindering or avoiding a creditor's legitimate claims, *see Willis v. Red Reef, Inc.*, 921 So. 2d 681, 684 (Fla. Dist. Ct. App. 2006) ("In essence, non-exempt assets may be converted into an exempt homestead even if this is done with an actual intent to hinder, delay, or defraud creditors."). A person who *receives* non-exempt funds from a debtor, and uses such funds

to purchase, invest in, or improve a homestead with the knowledge that the debtor intends to avoid paying the creditor, is protected under this rule *a fortiori*.

Our ruling comports with the homestead statute's historic objective of protecting the homes of debtors from the claims of unsecured creditors. As explained by the New Mexico Supreme Court: "[E]xperience has taught that in the long run obligations are more likely to be fulfilled by those whose connections with the community are stabilized by a protected interest in a relatively permanent place of abode than by those not so anchored." *Coppler & Mannick, P.C., v. Wakeland,* 117 P.3d 914, 917 (N.M. 2005) (quotation omitted). To the extent that our ruling means that the claims of otherwise deserving creditors may be defeated or delayed by those who seek to avoid their debts, RSA 480:1 expresses the legislature's intent to place the security of families in their homes before the interests of unsecured creditors. Cavadi is just such an unsecured creditor; he has made no showing that Barnes engaged in fraud or other illegality to procure the funds used to purchase Deyeso's homestead. His claim, therefore, must yield to the protection of the homestead law. *Cf.* 40 AM. JUR. 2D, *supra* § 4, at 384-86.

Cavadi contends that the trial court's conclusion squares with the application of equitable principles in the partition of real property. He argues that the provisions of RSA chapter 547-C (2007 & Supp. 2012) (Partition of Real Estate) "empower[ ] the trial court with broad equitable power and discretion to partition property and to *extinguish other existing rights in property,*" which is "precisely what the trial court did here." As explained above, however, equitable principles may be applied to reach beyond the literal language of the exceptions of RSA 480:4 only when there has been fraud, deception, or other misconduct in the procurement of funds spent on a homestead.

For the reasons stated above, we also reject Cavadi's contention that he prevails upon theories of unjust enrichment, unclean hands, or *in pari delicto.*

The parties also dispute the trial court's ruling that Deyeso's husband, who occupies the Property but has no ownership interest in it, is not entitled to claim the $100,000 homestead exemption. Because we conclude that Deyeso is protected against Cavadi's equitable lien under the homestead statute, we decline to address whether her husband is also so protected.

For the foregoing reasons, we conclude that the trial court erred in granting summary judgment to Cavadi. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

DALIANIS, C.J., and CONBOY and BASSETT, JJ., concurred.