# United States Court of Appeals
## For the First Circuit

Nos. 17-1815, 17-1936

DEUTSCHE BANK NATIONAL TRUST COMPANY,
Trustee for FFMLT Trust 2005-FF2,
Mortgage Pass-Through Certificates, Series 2005-FF2,

Plaintiff, Appellant/Cross-Appellee,

v.

JENNIFER L. PIKE,

Defendant, Appellee/Cross-Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Torruella, Lipez, and Thompson,
Circuit Judges.

Kevin P. Polansky, with whom Christine M. Kingston and Nelson Mullins Riley Scarborough LLP were on brief, for appellant.
Stephen T. Martin, with whom The Law Offices of Martin & Hipple, PLLC was on brief, for appellee.

February 19, 2019

**LIPEZ**, **Circuit Judge**.  In this diversity case, Deutsche Bank National Trust Company contends that the district court erred in concluding that its mortgage interest in a property in New London, New Hampshire, is subject to a homestead right of the property's resident, Jennifer Pike.  In a cross-appeal, Pike contends that the district court erred in denying her post-judgment motion for attorney's fees.  After careful review, we affirm both the rejection of Deutsche Bank's claims and the denial of Pike's request for attorney's fees.

## I.

### A. Factual Background

William and Jennifer Pike were married in 2000.[1]  In 2001, William bought the property at 34 Dogwood Lane in New London ("the Property").  Only William was listed on the deed, but Jennifer continuously resided at the address from the time of purchase through the filing of the present suit.  In 2003, William obtained a loan from New Century Mortgage Corporation secured by a mortgage on the Property.  Both William's and Jennifer's signatures were on this mortgage, which included a provision stating that "[b]orrower[] and [b]orrower's spouse . . . release all rights of homestead in the Property."  Jennifer disputes that

---

[1] For ease of reference, we will refer to William Pike as "William" and Jennifer Pike as "Jennifer."

she signed the New Century mortgage and asserts that she only later became aware of its existence.

In late 2004, William obtained another loan, secured by the Property, from First Franklin Financial Corporation, pursuant to which he again waived his homestead right. The parties agree that William did not obtain the First Franklin loan through fraud or other egregious misconduct. Jennifer did not sign the note or mortgage.[2] A few months later, the New Century loan balance was paid off and that mortgage was discharged.

The Pikes subsequently executed several transfers of the Property between William, Jennifer, and a family trust. The Property was deeded back to William in 2007.[3] The First Franklin mortgage was assigned to Deutsche Bank in 2009.[4]

The Pikes were divorced by decree on July 3, 2013. The decree included the following provision regarding the Property

---

[2] Although the First Franklin mortgage document stipulates that the borrower and the "borrower's spouse" release their homestead rights, the parties appear to assume that this provision would not be effective against a non-signatory spouse, and we proceed on that assumption.

[3] William filed for bankruptcy subsequent to these transfers, but the parties do not contend that his bankruptcy is relevant to the issues on appeal.

[4] The appellant's full name is Deutsche Bank National Trust Company, Trustee for FFMLT Trust 2005 FF2, Mortgage Pass-Through Certificates, Series 2005-FF2.

(strikethroughs in original; initialed, handwritten addition in italics):

**14. Marital Homestead:**

A. Jennifer Pike is awarded the ~~exclusive use and possession of the~~ marital homestead located at 34 Dogwood Lane, New London, New Hampshire free and clear of any interest of William Pike.

B.  Jennifer may remain in the home until it goes into foreclosure, or [their son] graduates high school.

C. If the house does not go [into] foreclosure and the parties can sell the home, the parties shall list the house for sale once [their son] graduates high school.  The Parties will share equally any equity in the home.

D.  ~~The Parties will share equally the cost of any necessary home repairs over $500.  If a repair is necessary, Jennifer will inform William of the repair via email and provide him an explanation of the repair needed and include a quote for the work, if possible. William will forward his share of the repair cost to the contractor directly if possible.  If that is not possible, he will give his share of the repair cost to Jennifer within 30 days of the repair.~~ [*With respect to repairs necessary to preserve the habitability of the*

- 4 -

*house, Jennifer will give notice to Bill of the need,*

*and upon Bill's review, and inspection, and agreement*

*that the repair is necessary, Bill shall share up to 50%*

*of the cost of the Repair.*]

The decree also provides, "[e]xcept as otherwise provide[d] herein, each party shall sign and deliver to the other party any document that is needed to fulfill or accomplish the terms of this Decree within thirty (30) days of the request to do so."

Deutsche Bank began foreclosure proceedings on the Property on July 11, 2013. About two weeks later -- on July 26 -- William deeded the Property to Jennifer, and the deed was recorded shortly thereafter. The deed states, "[t]his conveyance is in conformance with [the] divorce decree in the Matter of Jennifer Pike and William T. Pike, Jr."

Jennifer subsequently filed a complaint in state court asserting a homestead right in the Property and seeking to enjoin Deutsche Bank from foreclosing. The state court entered summary judgment in Deutsche Bank's favor after determining that the Bank had standing to foreclose, and that Jennifer's assertion of a homestead right was premature. The New Hampshire Supreme Court affirmed. See Pike v. Deutsche Bank Nat'l Tr. Co., 121 A.3d 279 (N.H. 2015).

**B. Procedural Background**

Shortly after the conclusion of the litigation in state court, Deutsche Bank filed this suit in federal court seeking a declaratory judgment either that its interest in the Property is not subject to Jennifer's homestead right (Count I), or that it is entitled to equitable subrogation "as to the amount it paid to discharge the prior mortgage" (Count II). In support of its equitable subrogation claim, Deutsche Bank contends that, as successor to First Franklin, it is entitled to step into the shoes of New Century -- the 2003 lender -- and benefit from Jennifer's waiver of her homestead right in the New Century mortgage because funds from the First Franklin loan -- obtained in 2004 -- were used to pay off the New Century loan. Jennifer pleaded counterclaims asserting the priority of her homestead right over Deutsche Bank's interest.[5] The parties eventually cross-moved for summary judgment.

Jennifer argued that she had a homestead right in the Property from the date of its purchase by virtue of her marriage to William and that the divorce decree did not automatically terminate her right. She also argued that Deutsche Bank could not demonstrate the presence of every element required for equitable subrogation under New Hampshire law. In particular, Jennifer

---

[5] Jennifer later voluntarily dismissed counterclaims for intentional and negligent infliction of emotional distress.

- 6 -

asserted that there was a material factual dispute concerning whether the First Franklin loan funds were used to pay off the New Century loan. She further argued that it would be unjust for Deutsche Bank to rely on the homestead waiver in the New Century mortgage given her contention that she had not in fact signed that mortgage.

For its part, Deutsche Bank argued that Jennifer's homestead right in the Property was extinguished or waived by the transfers after its purchase -- that is, the transfers of the Property between William, Jennifer, and a family trust before it was deeded back to William in 2007 -- or by the divorce decree. As to equitable subrogation, Deutsche Bank contended that all necessary elements were satisfied, and that Jennifer could not contest her signature on the New Century mortgage because she had not done so in the prior state litigation.

The district court concluded that factual disputes remained concerning the effect of the divorce decree, and it therefore denied the parties' cross-motions for summary judgment and scheduled a bench trial. In her pretrial briefing, Jennifer argued for the first time that Deutsche Bank could not invoke equitable subrogation because it had not shown that William obtained the First Franklin loan by fraud or other egregious misconduct. In response, Deutsche Bank argued that fraud is not a precondition to equitable subrogation under New Hampshire law.

In a pretrial order issued without prior notice to the parties, the district court explained that it viewed the applicability of equitable subrogation as "an issue of law that can be resolved without further factual development." Accordingly, the court ruled that, "as a matter of [New Hampshire] law, the circumstances in this case do not meet the threshold requirement of fraud or misconduct that would support the use of equitable subrogation to overcome the protections provided by" the homestead right.

The district court also cancelled the bench trial on the remaining issue concerning the effect of the divorce decree on Jennifer's homestead right. However, it granted Deutsche Bank's request to further brief the equitable subrogation issue and agreed to reconsider the viability of the claim. The court further stated that the bench trial would be rescheduled "[i]f the equitable subrogation claim is found to be viable."

Deutsche Bank then moved for reconsideration of the equitable subrogation decision, arguing that fraud is not an element of equitable subrogation and that, in any event, Jennifer had forfeited the fraud argument by not raising it earlier. The district court denied the motion. Notably, the court directly engaged with Deutsche Bank's arguments instead of taking the standard approach to a motion for reconsideration and considering

only whether the Bank had identified flaws in the original decision.

After the parties submitted briefs on whether the divorce extinguished Jennifer's homestead right, the district court issued a final order holding that (1) Jennifer's homestead right was not extinguished by the divorce, (2) her homestead right takes priority over Deutsche Bank's mortgage, and, hence, (3) "Jennifer may assert her homestead interest in the [P]roperty . . . if and when Deutsche Bank forecloses." The court, however, dismissed Jennifer's quiet title counterclaim because she had not demonstrated that "title to the [P]roperty can be settled in her exclusive of Deutsche Bank's mortgage interest." Deutsche Bank timely appealed, contending that the district court erred in (1) "sua sponte" dismissing the Bank's equitable subrogation claim on the basis that it had not demonstrated the First Franklin mortgage was acquired by fraud, and (2) ruling that Jennifer has a homestead right superior to the Bank's mortgage.

Jennifer subsequently moved for attorney's fees and costs pursuant to Federal Rule of Civil Procedure 54(d). The court granted her uncontested request for costs but denied her request for attorney's fees. We consolidated Jennifer's timely appeal with Deutsche Bank's appeal.

## II.

### A. The District Court's "Sua Sponte" Rulings

Deutsche Bank contends that the district court erred in "sua sponte" (1) dismissing its claim for a declaratory judgment that it is entitled to equitable subrogation, and (2) cancelling the bench trial. In other words, Deutsche Bank faults the court for taking these actions on its own initiative and without prior notice to the parties.

The district court arguably caught Deutsche Bank unawares when it dismissed the equitable subrogation claim based on the pretrial briefing. However, even assuming error, we discern no prejudice to the Bank. See Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Municipality of San Juan, 773 F.3d 1, 13 (1st Cir. 2014) ("[A] sua sponte dismissal will not be set aside where the aggrieved party cannot show any prejudice."). Deutsche Bank addressed Jennifer's argument that fraud was required to apply equitable subrogation in its pretrial briefs and was given the opportunity to provide additional briefing after the court dismissed the equitable subrogation claim. Although Deutsche Bank's post-dismissal brief was styled as a motion for reconsideration, the district court did not hold Deutsche Bank to the stringent standard for this type of motion. See Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (noting that a party seeking reconsideration of a legal ruling must demonstrate

- 10 -

that "the rendering court committed a manifest error of law"). Rather, the district court addressed the merits of Deutsche Bank's arguments and again concluded that equitable subrogation did not apply as a matter of law. Thus, even assuming the arguable proposition that the court erred by initially dismissing the equitable subrogation claim sua sponte, the court adequately corrected any error.[6]

Regarding the district court's decision to cancel the bench trial, the simple fact is that the district court did so after a pretrial conference at which, according to the district court, "counsel and the court agreed that there are no factual issues remaining in the case for the bench trial." To the extent Deutsche Bank now contends that the court misunderstood or misrepresented the Bank's position, it has waived that argument by failing to raise it before the district court and by failing to properly develop the record on appeal. See Barilaro v. Consol. Rail Corp., 876 F.2d 260, 263 (1st Cir. 1989) (stating that we "cannot use counsel's allegations regarding what occurred at the pretrial conference as grounds for appeal").

---

[6] We are unconvinced by Deutsche Bank's analogy of the district court's actions to those of the court in Berkovitz v. HBO, Inc., 89 F.3d 24 (1st Cir. 1996). Unlike in Berkovitz, the district court did not substantially change the rationale for its ruling from the initial dismissal to the denial of Deutsche Bank's motion for reconsideration. See id. at 30-31.

- 11 -

**B. Jennifer's Homestead Right**

Deutsche Bank argues that the district court erred in determining that its mortgage interest is subject to Jennifer's homestead right in the Property. Before this court, the parties do not appear to dispute, putting aside the equitable subrogation issue, that Jennifer had a homestead right in the Property, by virtue of her marriage to William and continuous occupancy, at least until the date of the divorce decree.[7] Deutsche Bank contends that she lost her homestead right either because it was terminated by the divorce decree or because she waived the right through her acceptance of certain language in the decree. The district court in effect concluded that Jennifer retained her homestead right because the decree transferred ownership of the Property to her, without the need for any subsequent conveyance. We review the district court's conclusion, based on its interpretation of the divorce decree and New Hampshire law, de novo.[8]

---

[7] The district court determined that none of the transfers prior to the divorce extinguished Jennifer's homestead right. Deutsche Bank does not press the issue on appeal.

[8] Under New Hampshire law, "[q]uestions of intent [in a divorce decree] are to be resolved by the trier of fact, whose findings will be upheld if supported by the evidence, while the meaning of the language in the agreement is a matter of law." Miller v. Miller, 578 A.2d 872, 873 (N.H. 1990) (citation omitted) (internal quotation marks omitted). We take this to mean that where, as here, the trial court's interpretation of the parties' intent is based on the face of the agreement, the appellate court reviews this interpretation de novo as a conclusion of law.

## 1. New Hampshire's Homestead Law

The New Hampshire homestead right, or homestead exemption, protects $120,000 of the value of a person's homestead from creditors, N.H. Rev. Stat. Ann. § 480:1, with certain statutorily defined exceptions, see id. § 480:4, which the parties do not contend are relevant to this appeal.[9]  A homestead is the place a person occupies as his or her home; "actual residency or occupancy," excluding temporary absences, is essential to the creation of a homestead because "[t]he purpose of the homestead exemption is 'to secure to debtors and their families, the shelter of the homestead roof[,] not to exempt mere investments in real estate, or the rents and profits derived therefrom.'"  Stewart v. Bader, 907 A.2d 931, 943 (N.H. 2006)(quoting Austin v. Stanley, 46 N.H. 51, 52 (1865)).  The "shelter of the homestead roof" does not mean a person is entitled to keep his or her home in all circumstances.  Rather, in the event of a forced sale, a person

---

[9] Before the district court, the parties appeared to dispute whether Jennifer could claim $120,000 or only the lesser amount -- $30,000 -- that applied at the time she first acquired a homestead right in the Property.  See In re Bartlett, 168 B.R. 488, 494-98 (Bankr. D.N.H. 1994) (discussing whether an increase in the statutory homestead amount can be "retroactively" applied).  We leave that issue for the appropriate court to decide if and when Jennifer seeks a set-off in the amount of her homestead right.

with a homestead right is entitled to a set-off in the statutorily defined amount.[10]   See N.H. Rev. Stat. Ann. § 480:7.

When a married couple resides together in a home, the homestead right "extends to . . . both spouses, even when only one spouse legally owns the homestead."  Maroun v. Deutsche Bank Nat'l Tr. Co., 109 A.3d 203, 208 (N.H. 2014) (citing N.H. Rev. Stat. Ann. § 480:3-a); see also N.H. Rev. Stat. Ann. § 529:20-a.  The homestead right of a property owner's spouse is established once he or she physically occupies the subject property.  Walbridge v. Estate of Beaudoin, 48 A.3d 964, 966 (N.H. 2012).  The spouse's homestead right is then ordinarily exempt from any subsequent attachment or encumbrance; however, the right is not exempt from any attachment or encumbrance that predates its establishment. Id.; see also Mason v. Wells Fargo Bank, N.A., No. 14-cv-77-JL, 2014 WL 2737601, at *3 (D.N.H. June 17, 2014) (concluding that a person who established a homestead right after the execution of a mortgage on a property "took the property subject to" the mortgage and "cannot invoke her homestead right as a defense to enforcement of the mortgage").

---

[10] Alternatively, a person with a homestead right can seek an injunction to prevent a forced sale if the equity in the home is not sufficient to cover both the creditor's claim and the homestead right.  See, e.g., Deyeso v. Cavadi, 66 A.3d 1236, 1238 (N.H. 2013).

- 14 -

The homestead right also can be waived, that is, voluntarily or intentionally relinquished.  Maroun, 109 A.3d at 228.  Although evidence of waiver must be "unequivocal," "if a mortgage document is signed by both spouses, 'with the formalities required for the conveyance of land,' no further evidence of waiver is required."  Id. (quoting N.H. Rev. Stat. Ann. § 480:5-a).

**2. Property Distribution by Divorce Decree**

In New Hampshire, "[t]he question of whether and to what extent property rights have been transferred from one person to another generally is resolved upon a determination of the transferor's intent." Mamalis v. Bornovas, 297 A.2d 660, 662 (N.H. 1972).  When property rights are transferred in a stipulated agreement, such as in the form of a stipulated divorce decree, "absent fraud, duress, mutual mistake, or ambiguity, the parties' intentions will be gleaned from the face of the agreement." Miller v. Miller, 578 A.2d 872, 873 (N.H. 1990).  Courts consider "the plain meaning of the language viewed in the context of the entire decree[,]" Matter of Oligny, 153 A.3d 194, 196 (N.H. 2016), and construe "[s]ubsidiary clauses . . . so as not to conflict with the primary purpose of the decree," id. (quoting Bonneville v. Bonneville, 702 A.2d 823, 825 (N.H. 1997)).  See also Sommers v. Sommers, 742 A.2d 94, 99 (N.H. 1999) ("We consider the intent of the parties as expressed in the language of the stipulation.").

- 15 -

Broadly speaking, a major purpose of a divorce decree "is to establish a final and equitable distribution of the marital property." Bonneville, 702 A.2d at 825; see also McSherry v. McSherry, 606 A.2d 311, 313 (N.H. 1992) ("[A] property settlement in a divorce decree is 'a final distribution of a sum of money or a specific portion of the spouses' property . . . [and] is not subject to judicial modification on account of changed circumstances." (alteration in original) (quoting Stebbins v. Stebbins, 438 A.2d 295, 297 (N.H. 1981))); see also N.H. Rev. Stat. Ann. § 458:16-a (providing that "[w]hen a dissolution of a marriage is decreed, the court may order an equitable division of property between the parties" and specifying that "[p]roperty shall include all tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties"). Given that divorce decrees establish a final division of property, it is unsurprising that such decrees can effectuate a conveyance of personal or real property. See Swett v. Swett, 49 N.H. 264, 264 (1870) (holding that an interest in real estate "vested in the wife, 'by the mere force of the [divorce] decree,' 'as effectually as the same could be done by any conveyance of the husband himself'" (quoting Whittier v. Whittier, 31 N.H. 452, 458 (1855))); see also Johnson v. Coe, 697 A.2d 939, 943 (N.H. 1997) ("The award of the . . . house to the plaintiff in the divorce decree was a

property settlement and, as such, not modifiable."); Bonneville, 702 A.2d at 826 (holding that a stock transfer in a divorce decree occurred "by operation of law"); Sommers, 742 A.2d at 99 (holding that language in a divorce decree "creat[ed] an immediate property interest" in a vehicle).

Not all conveyances in a divorce decree are self-executing. That is, a stipulated conveyance in a divorce decree may require a future occurrence or further action by the parties (a condition precedent) to take effect. See Spellman v. Spellman, 614 A.2d 1054, 1055 (N.H. 1992). However, "[b]ecause conditions precedent are disfavored, [courts] infer that the parties intended a condition precedent only where the plain language of the decree or stipulation requires such a construction." Sommers, 742 A.2d at 99 (emphasis added); see also United States v. Baker, No. 13-cv-213-PB, 2014 WL 4199120, at *3 (D.N.H. Aug. 22, 2014)("The husband and wife's subsequent failure to comply with a provision of the divorce judgment -- in this case, the execution and recording of a deed to the . . . properties -- will not invalidate or delay the conveyance unless the parties clearly intended for the provision to serve as a condition precedent."). Therefore, under New Hampshire law, a divorce decree may effectuate an immediate property transfer where its language plainly demonstrates an intention to do so. See Baker, 2014 WL 4199120, at *3 ("When a 'stipulation between the parties

- 17 -

. . . incorporated and merged into the divorce decree' 'clearly and affirmatively expresse[s] their intention' to convey a real property interest, that interest vests in the grantee 'on the effective date of the divorce decree.'" (alteration and omission in original) (quoting Mamalis, 297 A.2d at 663)).

### 3. Application of the Law

The district court correctly determined that Jennifer retained her homestead right under the plain language of the divorce decree, which clearly indicates the parties' intention that ownership of the Property immediately transfer to Jennifer: "Jennifer Pike is awarded the marital homestead located at 34 Dogwood Lane, New London, New Hampshire[,] free and clear of any interest of William Pike**."** This declarative statement, with no mention of any contingency or condition precedent, is the type of language that the New Hampshire Supreme Court has read to effectuate an immediate property transfer. See Bonneville, 702 A.2d at 826; Sommers, 742 A.2d at 99; cf. Spellman, 614 A.2d at 236-37 (concluding that a stipulated award of the marital home was not "self-executing" because the language of the stipulation specifically made the transfer contingent on, among other things, an appraisal of the home).

The other provisions regarding the "marital homestead" do not negate the parties' clear intent to transfer ownership to Jennifer. See Matter of Oligny, 153 A.3d at 196 (stating that

- 18 -

"[s]ubsidiary clauses" must be read "so as not to conflict with the primary purpose of the decree") (quoting Bonneville, 702 A.2d at 825). Agreeing to share the proceeds from a potential sale of the home once their son graduates high school, for example, is not incompatible with Jennifer's ownership. Nor does the decree's general provision that the parties "shall sign and deliver to the other party any document that is needed to fulfill or accomplish the terms of this Decree" evince an intention to make a deed transfer a condition precedent to Jennifer's ownership of the Property.[11]

There also is no unequivocal evidence that Jennifer waived her homestead right by agreeing to certain language in the decree. See Maroun, 109 A.3d at 228-29. Deutsche Bank makes much of the fact that the divorce decree mentions the possibility of a foreclosure on the Property. As discussed above, however, a potential foreclosure does not necessarily negate a property owner's homestead right. Rather, a homestead right superior to a mortgage may simply require the mortgagee to pay the holder of the

---

[11] The district court noted that William later deeded the Property to Jennifer in support of its conclusion that the parties intended to transfer ownership of the Property to her. However, contrary to Deutsche Bank's contention, the district court did not suggest that the deed transfer was a condition precedent. It expressly held that "Jennifer's right to the [P]roperty became effective immediately when the divorce decree issued on July 3, 2013."

- 19 -

right from the proceeds of a foreclosure sale.  See supra section II.B.1.  Therefore, the decree's mention of a possible foreclosure does not indicate that Jennifer relinquished her homestead right. For these reasons, the district court did not err in concluding that Jennifer enjoys a homestead right in the Property with priority over Deutsche Bank's mortgage.

## C. Equitable Subrogation

Deutsche Bank's equitable subrogation argument essentially goes as follows: First Franklin discharged the debt owed to New Century and thus stood to benefit from Jennifer's waiver of her homestead right in the New Century mortgage.  As successor to First Franklin, Deutsche Bank can stand in First Franklin's shoes, and thus benefit from Jennifer's waiver.  In other words, Deutsche Bank does not have to recognize Jennifer's claimed homestead right.[12]

Deutsche Bank further contends that the district court erred in dismissing the Bank's equitable subrogation claim because (1) Jennifer waived the argument that equitable subrogation cannot be applied to defeat a homestead right in the absence of fraud, and (2) New Hampshire law does not, in fact, require fraud.  As to

---

[12]  To be precise, Deutsche Bank argues that it is entitled to equitable subrogation "as to the amount that [First Franklin] paid to discharge the [New Century] [m]ortgage."  In practical terms, this would mean that Deutsche Bank does not have to pay Jennifer anything in the event of a foreclosure.

"waiver," we are unconvinced that Jennifer "waived" or "forfeited" her legal argument given that she raised it at a time when Deutsche Bank still had an opportunity to meaningfully respond and before the district court had rendered judgment.[13]  As to the merits of her claim, we must first outline the relevant law in New Hampshire.

### 1.  Background Law

Under New Hampshire law, equitable subrogation "is a broad doctrine [that] 'applies where one who has discharged the debt of another may, under certain circumstances, succeed to the rights and position of the satisfied creditor.'"  Chase v. Ameriquest Mortg. Co., 921 A.2d 369, 376 (N.H. 2007) (quoting 73 Am. Jur. 2d Subrogation § 5 (2001)).  For equitable subrogation to apply, certain conditions "must be met: (1) the subrogee [the entity who discharged the debt] cannot have acted as a volunteer; (2) the subrogee must have paid a debt upon which it was not primarily liable; (3) the subrogee must have paid the entire debt; and (4) subrogation may not work any injustice to the rights of others."  Id.

---

[13] Deutsche Bank specifically argues that Jennifer forfeited the fraud contention by failing to plead it as an affirmative defense, but the Bank forfeited this argument by failing to raise it in its opening brief. See Sparkle Hill, Inc. v. Interstate Mat Corp., 788 F.3d 25, 29 (1st Cir. 2015) (noting that arguments first asserted in a reply brief ordinarily are deemed waived or forfeited).

The subrogee has the burden of demonstrating an entitlement to equitable subrogation, "which generally includes pro[ving] . . . [t]he existence and applicability of equitable principles or contractual provisions as to subrogation and reimbursement."  Wolters v. Am. Republic Ins. Co., 827 A.2d 197, 200 (N.H. 2003) (second alteration in original) (quoting 16 L. Russ & T. Segalla, Couch on Insurance 3d § 222:7 (2000)).  Crucially, the New Hampshire Supreme Court has held that equitable principles, such as equitable subrogation, "may be applied to reach beyond the literal language of the exceptions" to the homestead right -- that is, to create a new exception to application of the homestead right -- "only when there has been fraud, deception, or other misconduct in the procurement of funds spent on a homestead."  Deyeso v. Cavadi, 66 A.3d 1236, 1241 (N.H. 2013)(emphasis added).

## 2. Application of the Law

On de novo review, we conclude that the district court correctly applied New Hampshire law and declined to apply equitable subrogation to defeat Jennifer's homestead right because there was no "fraud, deception, or other misconduct in the procurement of funds spent on [the] homestead."  Deyeso, 66 A.3d at 1241.[14]

_____

[14] Although Deutsche Bank faults the district court for offering a shifting rationale for its ruling, we disagree with this characterization.  In both of its orders, the district court read Deyeso to hold that equitable principles cannot be invoked to "reach beyond the literal language of the homestead exceptions" in the absence of fraud.  Contrary to Deutsche Bank's suggestion, the

Deutsche Bank's fallback argument is that even if the district court correctly interpreted New Hampshire law, it could have -- and should have -- exercised its equitable powers to apply equitable subrogation in the Bank's favor. We need not address the complex question of whether and in what circumstances a federal court sitting in diversity may order equitable relief that is not authorized under state law. See Guar. Tr. Co. of N.Y. v. York, 326 U.S. 99, 106 (1945) ("[A] federal court may afford an equitable remedy for a substantive right recognized by a State even though a State court cannot give it."); Bogosian v. Woloohojian Realty Corp., 923 F.2d 898, 904 (1st Cir. 1991) (noting conflicting circuit authority regarding the source of law for determining the equitable powers of a federal court sitting in diversity). Even assuming the district court had the ability to apply equitable subrogation outside the parameters of New Hampshire law, it was not compelled to do so, and it certainly did not abuse its discretion by declining to use its equitable powers in a manner at odds with state law. See Morgan v. Kerrigan, 523 F.2d 917, 921 (1st Cir. 1975) (per curiam) ("This court's review of orders issued in the exercise of the district court's equitable powers is limited

---

district court never held that fraud is an element of equitable subrogation or a precondition to applying equitable subrogation in all situations.

to a determination whether there has been an abuse of discretion.").[15]

## III.

In her cross-appeal, Jennifer contends that she is entitled to attorney's fees based on a state statute and a provision in the Deutsche Bank mortgage. The statute provides, in relevant part, as follows:

> If a retail installment contract or evidence of indebtedness provides for attorney's fees to be awarded to the retail seller, lender or creditor in any action, suit or proceeding against the retail buyer, borrower or debtor involving the sale, loan or extension of credit, such contract or evidence of indebtedness shall also provide that:
>
> I. Reasonable attorney's fees shall be awarded to the buyer, borrower or debtor if he prevails in
>
> (a) Any action, suit or proceeding brought by the retail seller, lender or creditor; or
>
> (b) An action brought by the buyer, borrower or debtor[.]

N.H. Rev. Stat. Ann. § 361-C:2 (emphases added). The Deutsche Bank mortgage provides:

---

[15] We recognize that the district court, at various places in its two orders related to equitable subrogation, seems to suggest that its hands were tied by state law. However, we understand the district court's rulings ultimately to rest on its determination that equity would not be served by applying equitable subrogation in a situation where it would not be applied by state courts. See, e.g., Deutsche Bank Nat'l Tr. Co. v. Pike, No. 15-cv-304-JD, 2017 WL 2608727, at *3 (D.N.H. Feb. 12, 2017) ("Contrary to Deutsche Bank's theory, [Jennifer] would not receive a windfall through her homestead interest but instead would receive the protection intended and provided by [the homestead statute].").

- 24 -

> 25. Attorneys' Fees. Pursuant to . . . § 361-C:2, in the event that <u>Borrower</u> shall prevail in (a) any action, suit or proceeding, brought by Lender, or (b) an action brought by <u>Borrower</u>, reasonable attorneys' fees shall be awarded to <u>Borrower</u>.

(Emphases added.) Jennifer did not sign the First Franklin, now Deutsche Bank, mortgage, and William is listed as the sole "borrower." The term is not defined in the mortgage or in section 361-C, but Jennifer concedes that she is not the "borrower" for purposes of the mortgage.

The district court concluded that Jennifer is not entitled to attorney's fees under the statutory provision and the mortgage precisely because she "is not the borrower." The court further held that even if Jennifer could be considered a "debtor," the statute and the mortgage provision do not apply because Deutsche Bank did not sue her for breach of the note or mortgage. Nevertheless, on appeal, Jennifer presses the argument that she is a "debtor" for purposes of the mortgage and, as such, is entitled to attorney's fees pursuant to the mortgage provision and section 361-C:2. We generally review the district court's denial of attorney's fees for abuse of discretion but review any underlying conclusions of law de novo. <u>In re Volkswagen & Audi Warranty Extension Litig.</u>, 692 F.3d 4, 13 (1st Cir. 2012).

Deutsche Bank raises a plethora of reasons why Jennifer is not entitled to attorney's fees under section 361-C:2 and the mortgage. It suffices to say, however, that we essentially agree

with the district court's straightforward analysis.[16]  The court correctly determined that Jennifer is not entitled to the benefit of the mortgage's attorney's fees provision, which is expressly limited to the "borrower."  Section 361-C:2 requires reciprocal treatment of both sides of a debt contract -- here, the mortgagee and William -- but does not rewrite the mortgage's terms to render the Bank responsible for the attorney's fees of a third party. The district court did not commit legal error or otherwise abuse its discretion in denying her fee request.[17]

---

[16] Among its other arguments, Deutsche Bank contends that the district court did not have jurisdiction to consider Jennifer's fee request.  Because Jennifer's entitlement to attorney's fees is easily resolved on the merits, we do not address the jurisdictional issue.  See Cozza v. Network Assocs., Inc., 362 F.3d 12, 15 (1st Cir. 2004) ("The rule is well established in this Circuit that resolution of a complex jurisdictional issue may be avoided when the merits can easily be resolved in favor of the party challenging jurisdiction.").

[17] We note that it is somewhat disingenuous for Jennifer to contend she has rights arising under the mortgage given that she has repeatedly disavowed any connection to the mortgage, both in state court and before the district court.  Courts generally do not approve of such attempts to have it both ways.  See RFF Family P'ship, LP v. Ross, 814 F.3d 520, 527 (1st Cir. 2016) (discussing the doctrine of judicial estoppel, which "prevent[s] a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case or in an earlier court proceeding" (alteration in original) (quoting Perry v. Blum, 629 F.3d 1, 8 (1st Cir. 2010))).

***

For the foregoing reasons, we affirm as to both appeals. Each side shall bear its own costs.

So ordered.