### GUNNISON *v.* TWITCHEL.

The homestead act does not carve out of the real property occupied as the family homestead by each head of a family, an estate of the value of $500, distinct from the residue of the property, possessing from its inception the quality of assignability, either separately or in connection with the entire property ; but only creates, for the mutual benefit of the husband, wife and minor children, an inchoate right of homestead of that value, in every piece of real property of that or greater value, owned and occupied as a family homestead, incapable of extinguishment by the sole act of the husband and father, except as specially provided in the act, contingent upon the occurrence of circumstances which may entitle the parties in whom it vests to demand its enforcement, personal to them, until perfected by the actual separation of the property to which it may be applied from the residue of the estate, liable to be waived or released only by the joint deed of the husband, duly executed, but no more assignable to a third person, as an available right in the hands of the assignee, until vested in some specific property, than a married woman's right of dower in lands of which her husband is or may be seized, can be conveyed or assigned, as an available right by her, during the life time of her husband.

The husband, without the coöperation of the wife, may mortgage or convey the entire property in which the inchoate right of homestead exists, subject to that right ; and the mortgagee or purchaser, under such deed of the husband alone, will hold the estate, subject to the assignment of a homestead of the value of $500 therefrom, whenever properly demanded by the party entitled thereto.

Where, in a second mortgage, the husband and wife, by their joint deed, have released the homestead right, such second mortgagee may redeem the first mortgage, and hold the premises free of the homestead right; but he cannot require the first mortgagee to set out and assign to him a homestead of the value of $500 therefrom.

IN EQUITY. The bill alleged that Twitchel, on the 5th day of September, 1854, by his deed of that date, duly executed, conveyed to Hatch, Huntoon & White, in mortgage, a tract of land in Newport, particularly described, with the buildings thereon, to secure the payment of said Twitchel's note to them for $1000, of even date, payable on demand, with interest after ninety days ; that said prem-

Gunnison v. Twitchel.

ises, so mortgaged, were the homestead of Twitchel and wife, and occupied by them as such at the date of said mortgage; that the wife only relinquished her right of dower in the mortgaged premises, while the homestead right of Twitchel and wife was not conveyed by the mortgage; that on the 11th day of September, 1854, Twitchel and wife, by their joint deed of that date, mortgaged the premises before mortgaged to Hatch, Huntoon and White, to the complainant, to secure the payment of Twitchel's note to the complainant for $439, dated December 24, 1853, given for that sum of money by the complainant on that day loaned said Twitchel, at the request of himself and wife, and in the same mortgage deed jointly conveyed and released to the complainant their right of homestead in said premises; that on the same 11th day of September, 1854, said Twitchel and wife, in order to secure the payment of his note for $25, dated June 28, 1852, payable on demand, with interest annually, given to one Olive Ann Cass, since Olive Ann Kimball, in compensation for labor and work by her performed for said Twitchel, and his note for $118.57, dated September 11, 1854, payable on demand, with interest annually, given to one Sarah R. Cass, for work and labor by her performed for said Twitchel, again mortgaged said premises to said Olive Ann and Sarah R. Cass, by their joint deed, wherein and whereby they again jointly conveyed and released to said Olive Ann and Sarah R. their right of homestead in said premises, which last mentioned mortgage, on the 9th day of March, 1857, was duly assigned and transferred to the complainant, with the notes thereby secured; that no part of the principal or interest of the notes given to the complainant and to said Olive Ann and Sarah R. Cass had ever been paid, but the same remained wholly due and unpaid to the complainant, although payment thereof had been often requested; that on the 12th day of September, 1854, Twitchel and wife, to secure to one Luke Paul the

payment of his two promissory notes, payable to said Paul, or order, on demand, with interest annually; one dated November 30, 1852, for $100, and the other dated June 5, 1854, for $150, again mortgaged said premises to said Paul, which last mentioned mortgage, with the notes thereby secured, was, on the 9th day of January, 1857, by said Paul duly assigned and transferred to said Hatch; that on the 21st day of January, 1856, Huntoon, and on the 21st day of February, 1856, White, by their respective deeds of those dates, duly assigned and transferred to said Hatch their several interests in the first mentioned mortgage and note; that on the third Tuesday of May, 1856, by the consideration of the Supreme Judicial Court, holden at said Newport, said Hatch recovered a conditional judgment against said Twitchel, for the aforesaid premises on said first mortgage, on which a writ of possession afterwards issued; that on the fourth Tuesday of January, 1857, by the consideration of the same court, holden at said Newport, he recovered a conditional judgment for said premises, on the last mentioned mortgage against said Twitchel and his wife, on which also a writ of possession was subsequently issued; that by virtue of said writs of possession said Hatch had taken and still held possession of said premises, and excluded the complainant from any share in the income and profits thereof.

The bill further alleged, that the complainant had frequently requested Twitchel and wife to pay the debts and interest secured by the mortgages holden by him, or to release their equity of redeeming said premises; that he had frequently requested said Hatch to make partition of said premises, and set out to the complainant the homestead right of said Twitchel and his wife therein, and permit the complainant to enter into possession thereof, or else to permit the complainant to participate in a reasonable share of the profits of said premises, all which requests had been refused; said Twitchel and wife and said Hatch pretend-

Gunnison *v.* Twitchel.

ing that there was some incumbrance on said premises previous to the mortgages thereof to the complainant, the particular nature whereof they refused to disclose.

The bill prayed for discovery; that an account of the amount due the complainant on the two mortgages holden by him might be taken under the direction of the court, and that said Twitchel and wife might be decreed to pay the same, with costs of this suit; or, in default of such payment, that said Twitchel and wife, and said Hatch, and all other persons might be debarred and foreclosed from all right and equity of redemption in and to said mortgaged premises; that said Hatch might be decreed to set off to the complainant the homestead right or estate of Twitchel and wife in said premises, or that the same might be set off by the court, and the complainant be allowed to enter upon, take and hold quiet possession thereof; and for general relief.

Twitchel and wife were defaulted, and the bill decreed to be taken *pro confesso* as to them. Hatch filed a general demurrer.

*A. & S. H. Edes*, for Hatch.

*Burke & Waite*, for the complainant.

FOWLER, J. No question was made in the argument, and there can be none, that this court sitting as a court of equity has ample jurisdiction of all the matters of relief sought in the complainant's bill. It has jurisdiction in cases respecting the redemption and foreclosure of mortgages of real estate, in suits for discovery, where a discovery may lawfully be required, and in cases for the partition of real estate. Rev. Stat., ch. 171, sec. 6; Comp. Laws 434; 1 Story's Equity Jurisprudence, secs. 646, 658; *Whitten* v. *Whitten*, 36 N. H. 326.

The whole matter of controversy between the parties under the demurrer relates to the complainant's title.

While the complainant contends that by the joint deed of Twitchel and wife to himself, executed on the 11th day of September, 1854, and the similar deed of the same parties to Olive Ann and Sarah R. Cass, executed on the same day, and since assigned to himself, in both of which the grantors expressly released and waived all rights of homestead in the premises therein described, there was vested in him a good and sufficient title as against the defendant Hatch, and all the world, to a homestead of the value of $500 out of the premises before conveyed to Hatch by Twitchel alone; the defendant, Hatch, claims that by the deed of Twitchel to himself, in which Twitchel's wife joined to relinquish her right of dower, he acquired a perfect title to the entire property therein described, including the family homestead; or if not, that he is entitled to hold the same against the complainant, who acquired, by the two mortgages he now holds, only a title, free from the right of homestead exemption, to the same property before conveyed to himself, and subject to his prior lien thereon.

These conflicting positions necessarily involve a consideration of the nature and characteristics of the homestead contemplated and provided for in the act of July 4, 1851, generally known as the Homestead Act, and distinctly raise the question whether that act, by its own operation, carves out of the real property occupied as the family homestead by each head of a family, and vests in the husband and wife, where those relations exist, an estate of the value of $500 distinct from the residue of the property, possessing, from its inception, the quality of assignability, either separately or in connection with the entire property occupied as a family homestead, by the joint deed of the husband and wife, duly executed; or only creates a right to an estate of that value therefrom, contingent and initiate, existing in the husband and wife during the life time of the husband, and in the wife and minor children after his decease, leaving a widow, or children under age, personal

Gunnison *v.* Twitchel·

to the husband and wife, to the widow or minor children, and to be waived or released only in the modes prescribed by statute, but absolute, consummate and transferable only when it has become vested by the specific property to which it attaches, having been assigned and set apart from the other real property occupied as the family homestead ; and whether this homestead, if regarded as an estate, can be conveyed, or, if considered as a right, can be extinguished, waived or released by the sole act of the husband and father.

The decision of these questions depends on the interpretation to be given and the construction to be put upon the phraseology of the homestead act, and although its language is by no means perspicuous, and its terms and details are far from clear, full or explicit, we think a careful examination of its provisions cannot fail to satisfy every one, that the legislature must have intended by its enactment to create, in every family homestead of sufficient value, only an inchoate right of homestead exemption to the value of $500, unassignable until perfected by the setting apart thereof in some way from the rest of the property occupied as a family homestead, and not an absolute, independent estate of that value, transferable at the will of the person or persons in whom it vests, before its separation from the general estate out of which it issues. The terms employed in the first section of the act, in relation to the "release" and "waiver" of the homestead right, are entirely inconsistent with the idea that the legislature could have intended by the operation of the act itself to create an estate transferable and assignable like any other interest in lands; and it seems to us quite clear that the obvious purpose and necessary effect of the whole enactment is to create, for the mutual benefit of the husband, wife and minor children, where those relations exist, an inchoate right of homestead exemption to the value of $500, in every piece of real property in this State of that or greater value,

owned and occupied as a family homestead, incapable of extinguishment by the sole act of the husband and father, except as specially provided in the act itself, contingent upon the occurrence of circumstances which may entitle the parties in whom it vests to demand its enforcement, personal to them until perfected by the actual separation of the property to which it may be applied from the residue of the estate, liable to be waived or released only by the joint deed of the husband and wife, duly executed, with all the formalities necessary to convey real estate, but no more assignable to a third'person, as an available right in his hands, until it has become vested in some specific property designated and set apart for the purpose in some proper way, than a married woman's right of dower in the lands of which her husband is or may be seized during coverture, can be conveyed or assigned by her during the life time of her husband. *Norris* v. *Moulton*, 34 N. H. 395; *Fletcher* v. *State Capital Bank*, 37 N. H. 369; Comp. Laws 474–5–6.

We have already stated that in our judgment this right of homestead exemption, contingent and inchoate, as it exists in the husband and wife where that relation subsists, is incapable of being extinguished, destroyed, waived or released by the sole act of the husband, and should not have deemed it necessary to remark further upon that point, but that it has been with some plausibility contended, that from the language of the first clause of the sixth section of the act there arises a clear and necessary implication that the husband alone, before the statute homestead is set out, may convey or release it, together with the property in which it exists, inasmuch as he is expressly prohibited by that clause from alienating it after it has been set apart from the rest of the estate. Such a construction of that clause would conflict directly with the proviso of the same section, violate the letter as well as the spirit of the preceding sections, and effectually nullify

the manifest design and purposes of the whole act. If any thing can be clear, from the language employed, it is that the great and paramount object of the homestead act was—if the family ever owned and occupied a homestead—to protect and preserve inviolate, against the improvident, reckless or injurious acts of the husband and father, whether in contracting debts, executing deeds and mortgages, or last wills and testaments, against his creditors, grantees, mortgagees and devisees, and even his heirs at law, *a family home*, a little spot, where the wife and mother, during her life, and the children, during their minority, might remain undisturbed and secure against the claims of the selfish, unfeeling and avaricious. It is unnecessary to say how utterly this object must be frustrated, in the great majority of cases, if avarice, cupidity, or interested friendship had only to secure a grant or conveyance of the family homestead from that same husband and father. Such a grant would avoid the expense of a judgment execution and levy, the risk and uncertainty of a will, and the delay of an administration, while it would enable the party to whom it was made to turn the family homeless upon the cold charity of the world during the life of the vicious or worthless husband and father, with no opportunity for friends to interfere by redeeming from a levy, and without the brief delay usually attendant upon the settlement of an estate by an executor or administrator.

But a construction of the clause under consideration which would lead to such results, opposed as it would be to the whole tenor of the rest of the act, may readily be avoided without doing violence to its language; and such interpretation be given to it as shall be entirely consistent with the proviso which follows, as well as with the preceding sections of the statute.

The words of the clause are: " No conveyance or alienation by the husband, of any property exempt and set off as aforesaid, shall be valid unless the wife join in the deed

of conveyance." Now, no reason has been suggested, and none seems possible, why the legislature should make the deed of the husband alone ineffectual to pass the homestead after it is set off, which does not apply with equal force to his conveyance or alienation of the property in which the homestead right exists, so far as that right is concerned, before it has become vested by the setting apart from the rest, of the $500 worth of property to which it attaches. The proviso which follows demonstrates very clearly that it could not have been intended by this clause to give the husband full authority generally to convey the property in which the homestead right existed, without the assent and coöperation of the wife; for it expressly authorizes the husband, without the consent of the wife, to mortgage the homestead, meaning the property in which the homestead right may afterwards exist by virtue of its occupation as the family residence, at the time of its purchase, to secure the payment of the purchase money.

If the clause under consideration be regarded as eliptical, and the omitted words be supplied, any seeming repugnancy is avoided, and the clause harmonizes entirely with the proviso attached to it, as well as with all other portions of the act. It may properly, and without any violation of the recognized rules of grammatical construction, be paraphrased as follows: "No conveyance or alienation by the husband of any property exempt as aforesaid," [that is, of any property in which the right of homestead exemption exists, as provided by the first section of the act, so far as that right is concerned,] " and no conveyance or alienation by the husband of any property, set off as aforesaid," [that is, of any homestead set apart as provided or contemplated in the preceding sections,] " shall be valid, unless the wife join in the deed of conveyance." Then the proviso which follows, that the husband may, without the wife's consent, mortgage the property in which the right of homestead exemption may afterwards exist in

consequence of its being occupied as a family home at the time of its purchase, for the payment of the purchase money, comes in appropriately as an exception to the general prohibition of the first branch of the preceding clause, instead of having no apparent connection therewith.

We are, therefore, of opinion that the sixth section of the homestead act expressly prohibits the husband from alienating or in any way conveying, without the concurrence of the wife, not only the homestead after it has been set out, as provided or contemplated in the act, but also the property occupied as the family homestead, and to which the right of homestead exemption attaches, so far as that right is involved, except by mortgage made to secure the purchase money at the time of the purchase.

We have been referred by the counsel for the complainant to the case of *Richards* v. *Chase*, 2 Gray 383, arising under the Massachusetts homestead act of 1851, the third section of which provided for the designation of a homestead in the deed of purchase, or by a subsequent writing, duly sealed, acknowledged and recorded, where the Supreme Court of that State, in construing the language of the fourth section of the same act, which provides that "no conveyance by a husband, of any property exempted as aforesaid, shall be valid in law unless the wife join in the deed of conveyance;" decided that a mortgage, by the husband alone, of property designated as a homestead in the deed of purchase, was utterly void, although the property mortgaged were of far greater value than the homestead by statute exempted from levy upon execution. The court seem to rest their opinion chiefly upon the peculiar provisions of the third section of their statute, under which the property mortgaged had been designated in the deed of purchase as the family homestead. However sound this decision may have been under the special requirements of the Massachusetts enactment, (and we are not disposed to question its correctness, although we con-

fess it seems to us a different conclusion might well have been reached without doing violence to the statute,) it can have little weight in giving a construction to similar words in an act creating a right of homestead, wherever a family owns and occupies real estate or buildings. To hold that it was the intention of the legislature in adopting the act of July 4, 1851, to prohibit every husband from mortgaging or otherwise conveying any interest in, or any part of the real estate which his family might happen to occupy as a homestead residence at the time the act went into effect, or subsequently, unless his wife should join in the deed relinquishing the homestead right, would make the statute one to embarrass and prevent the conveyance of real estate, rather than one to secure the homes of families from alienation and levy upon execution. We are, therefore, of opinion that a reasonable construction of that act leaves the husband at liberty, without the coöperation of the wife, to mortgage or convey the whole of the property in which the homestead right exists, subject to that right, precisely as he may mortgage or convey it, subject to the right of dower; and that the mortgagee or purchaser under such deed of the husband alone, will hold the estate, liable to the assignment of a homestead of the value of $500 therefrom, whenever demanded by the husband and wife, or perhaps by the wife alone, or, after the husband's death, by the wife or minor children, unless the right thereto shall have been waived or released by the husband and wife in the mode prescribed by the statute.

Entertaining these views of the meaning and true construction of the homestead act, and of the nature and characteristics of the right of homestead exemption, we arrive at the conclusion that although the homestead property of Twitchel and wife passed to Hatch, Huntoon and White, by the mortgage of September 5, 1854, now holden by Hatch alone, subject to the right of homestead exemption, yet, as that right was personal to Twitchel and wife,

Gunnison *v.* Twitchel.

and incapable of being transferred by them to the complainant and Olive Ann and Sarah R. Cass, by the deeds of September 11, 1854, but was and could only have been waived or released by those deeds in favor of the grantees therein named, their heirs and assigns, the complainant simply holding mortgages of the premises in controversy free from the right of homestead exemption, but·subject to the prior mortgage thereof to Hatch, Huntoon and White, now holden by the defendant Hatch. He may avail himself of the benefit to be derived from the waiver and release of their homestead right by Twitchel and wife, by a foreclosure of his mortgages upon the premises, after paying the prior mortgage thereof, holden by Hatch. He has no authority to demand, or this court any power to assign or compel Hatch to assign and set out to him a homestead of the value of $500 from the mortgaged premises.

For these reasons the demurrer must be sustained, and the bill be dismissed as to Hatch, with costs. If, as we suppose, the only purpose of the bill was to obtain an assignment of the homestead against Hatch, it may as well be dismissed generally.

*Demurrer sustained.*