NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2014-024


GEORGE MAROUN, SR. & a.

v.

DEUTSCHE BANK NATIONAL TRUST COMPANY

Argued: September 18, 2014
Opinion Issued: December 30, 2014


Paul A. Petrillo, of Salem, by brief and orally, for the plaintiffs.


Hinshaw & Culbertson LLP, of Boston, Massachusetts (Marissa I. Delinks and Justin M. Fabella on the brief, and Ms. Delinks orally), for the defendant.


CONBOY, J. The plaintiffs, George Maroun, Sr. (husband) and Edith Maroun (wife), filed a petition seeking to enjoin the defendant, Deutsche Bank National Trust Company (bank), from foreclosing on property owned by the wife. The Superior Court (McHugh, J.) denied the plaintiffs' summary judgment motion and granted the bank's cross-motion for summary judgment. The plaintiffs appeal, and we affirm.

I.    Background

The following facts are drawn from the trial court's order or are otherwise undisputed on the record before us. Prior to 1991, the plaintiffs owned

property in Salem (the property) together. In 1991, the husband executed a deed (1991 deed) that conveyed his interest in the property to the wife. Ten years later, in 2001, the husband executed a notarized affidavit (2001 affidavit), which stated that at the time he executed the 1991 deed he was married to the wife and that, "through accident, inadvertence or mistake, the deed did not state that [he] released [his] homestead rights." The husband purportedly made the 2001 affidavit "to correct said omission." The affidavit referenced only the 1991 deed, and the correction did not purport to relate to any specific mortgage on the property. The affidavit was filed with the Rockingham County Registry of Deeds. Also in 2001, the husband and wife executed a mortgage on the property (2001 mortgage), which stated: "I, George C. Maroun, husband of mortgagor, hereby waive all rights of homestead and other interests herein." In 2002, the husband and wife executed another mortgage on the property (2002 mortgage) that included the same language waiving the husband's homestead right and other interests in the property.

In 2006, the wife, alone, executed both a promissory note and a mortgage on the property (2006 mortgage), which are the subject of this litigation. The mortgage document erroneously states that the wife is a single woman. Although the mortgage document also states, "Borrower [wife], and Borrower's spouse, if any, release all rights of homestead . . . and . . . other interests in the Property," the husband did not sign the note or the mortgage document. In 2009, the mortgage was assigned to the bank. The bank took no action to address the status of the husband's homestead right.

In 2008, the wife filed an individual Chapter 13 bankruptcy petition that listed the property as an asset on the required schedule of real property. In 2010, the wife filed amended schedules of assets with the bankruptcy court in her bankruptcy case that asserted that the husband possessed a homestead right in the property and that the husband's claim had a higher priority than the 2006 mortgage. When the wife ultimately emerged from bankruptcy protection, she was required to pay some prepetition arrearage amounts secured by the 2006 mortgage and to make certain ongoing payments on the debt. Following her discharge, the wife did not cure her arrears, and the bank sought to foreclose upon the property.

The plaintiffs filed a petition for injunctive relief in the superior court, arguing that the husband's homestead right has priority over the 2006 mortgage debt, and requesting a permanent injunction against the bank's foreclosure sale of the property. The parties agreed that there were no disputed issues of material fact, and each moved for summary judgment. The trial court granted the bank's motion for summary judgment and denied the plaintiffs' motion.

On appeal, the plaintiffs argue that the trial court erroneously concluded that the husband waived or released his homestead rights with respect to the

2

2006 mortgage. The plaintiffs also contend that the trial court erred by not finding that, pursuant to the doctrines of res judicata and collateral estoppel, the bank is estopped from foreclosing on the husband's homestead rights based upon rulings in the wife's bankruptcy case. Finally, despite the trial court's finding that an erroneous reference to the wife's status as a single woman in the 2006 mortgage document was probably a scrivener's error, the plaintiffs assert that the erroneous reference "is not without relevance." We address each argument in turn.

## II.     Standard of Review

In reviewing the trial court's rulings on cross-motions for summary judgment, "we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law." Granite State Mgmt. & Res. v. City of Concord, 165 N.H. 277, 282 (2013) (quotation omitted). "If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment." Id. (quotation omitted).

## III.     Waiver of Homestead Right

The trial court concluded that the husband's notarized 2001 "affidavit explaining that his intent in giving the deed was to release his homestead rights" was "sufficient to validly waive his homestead rights" as to the 2006 mortgage. On appeal, the plaintiffs argue that the trial court erroneously "imputed" the husband's prior waivers of his homestead right, including the waiver in the 2001 affidavit, to the 2006 mortgage because the homestead statute "does not contain conditional words or phrases regarding when or how frequently a written waiver or encumbrance of [the] homestead must occur to be valid."

Resolving this issue requires us to interpret and apply the statutory homestead exemption. See RSA 480:1, :3-a, :5-a (2013), :4 (Supp. 2014). The interpretation and application of statutes present questions of law, which we review de novo. Deyeso v. Cavadi, 165 N.H. 76, 79 (2013). In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. Chase v. Ameriquest Mortgage Co., 155 N.H. 19, 22 (2007). When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. Id. We do not construe statutes in isolation; instead, we attempt to do so in harmony with the overall statutory scheme. Id. When interpreting two or more statutes that deal with a similar subject matter, we construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statutes. Id. Statutory

3

homestead protections are universally held to be liberally construed to achieve their public policy objective.  See Deyeso, 165 N.H. at 80.

In New Hampshire, "[e]very person is entitled to $100,000 worth of his or her homestead, or of his or her interest therein, as a homestead."  RSA 480:1.  "The homestead right is generally exempt from attachment or encumbrance."  Stewart v. Bader, 154 N.H. 75, 88 (2006).  "The purpose of the homestead exemption is to secure to debtors and their families the shelter of the homestead roof."  Deyeso, 165 N.H. at 79; see also Gunnison v. Twitchel, 38 N.H. 62, 69 (1859) ("[T]he great and paramount object of the homestead act [is] . . . to protect and preserve inviolate . . . a family home . . . .").  "The exemption protects the family from destitution, and protects society from the danger of its citizens becoming paupers."  Deyeso, 165 N.H. at 79-80 (quotation, brackets, and ellipsis omitted).  "It also promotes the stability and welfare of the state by encouraging property ownership and independence on the part of the citizen."  Id. at 80 (quotation and brackets omitted).

The statutory protection of the homestead right also extends to spouses who occupy the homestead but are not title owners of the property:  "The owner and the husband or wife of the owner are entitled to occupy the homestead right during the owner's lifetime," and, after the owner's death, the surviving spouse is entitled to the homestead right during his or her lifetime.  RSA 480:3-a; see Bothell v. Sweet, 6 A. 646, 648 (N.H. 1886) (concluding that plaintiff's homestead right was not affected by three mortgages in which she did not join because she "preserved her homestead right by occupation").  The statute, therefore, contemplates a homestead right in both spouses, even when only one spouse legally owns the homestead.  See RSA 480:3-a.

In accord with the statute's purpose, RSA 480:4 states that "[t]he homestead right is exempt from attachment during its continuance from levy or sale on execution, and from liability to be encumbered or taken for the payment of debts."  The statute provides only four exceptions to the homestead right exemption:  (1) "the collection of taxes"; (2) "the enforcement of liens of mechanics and others for debts created in the construction, repair or improvement of the homestead"; (3) "the enforcement of mortgages which are made a charge thereon according to law"; and (4) "the levy of executions as provided in this chapter."  RSA 480:4; see Deyeso, 165 N.H. at 79.  Additionally, "[n]o deed shall convey or encumber the homestead right, except a mortgage made at the time of purchase to secure payment of the purchase money, unless it is executed by the owner and wife or husband, if any, with the formalities required for the conveyance of land."  RSA 480:5-a.  Moreover, if a deed is signed by both spouses with the requisite formalities, there is no requirement that the text of the deed contain an express waiver of the homestead right.  See Verdolino v. Anderson, 12 F. Supp. 2d 205, 206 (D.N.H. 1998) (rejecting argument that a mortgage document must contain an explicit waiver of the homestead exemption); Perley v. Woodbury, 76 N.H. 23, 25-26

4

(1911) (recognizing that if the statutory requirements are satisfied, an express waiver is unnecessary to encumber or convey the homestead right).

Here, there is no dispute that the husband did not sign the 2006 mortgage. Therefore, the 2006 mortgage did not comply with RSA 480:5-a and did not convey or encumber any homestead right that the husband had in the property. See RSA 480:5-a. The bank does not challenge this proposition but argues, instead, that the husband did not have a homestead right to assert in 2006 because he had waived all his interest in the property, including his homestead right, by virtue of the waiver contained in his 2001 affidavit. We agree.

The 2001 affidavit waiver is distinguishable from the 2001 and 2002 mortgage waivers executed in compliance with RSA 480:5-a. The two mortgage waivers cannot be interpreted to act upon any other conveyance or encumbrance. Cf. Chase, 155 N.H. at 22-23 (concluding mortgage could not constitute a charge on homestead according to law because it did not satisfy statutory requirements of RSA 477:3 and RSA 480:5-a). In contrast, by executing the 2001 affidavit, the husband purported to relinquish his homestead right, not with respect to a specific encumbrance, but with respect to the conveyance of his entire interest in the property to his wife. Thus, the issue before us is whether that waiver was effective as to the 2006 mortgage, notwithstanding the fact that the husband did not sign the mortgage document and continued to reside in the property with his wife. See RSA 480:3-a, :4.

Waiver is the voluntary or intentional abandonment or relinquishment of a known right. See Debonis v. Warden, N.H. State Prison, 153 N.H. 603, 605 (2006). "[T]he general principle, recognized by repeated decisions and by common sense, is, that a provision, made by law for the benefit of particular individuals, may be waived by them." Fletcher v. Neally, 20 N.H. 464, 466 (1846); see, e.g., Debonis, 153 N.H. at 605 (noting that petitioner waived his statutory right to a revocation hearing); Duke/Fluor Daniel v. Hawkeye Funding, 150 N.H. 581, 584 (2004) (recognizing that statutory mechanic's lien can be waived by contract). Statutory exemptions, such as the homestead right, are generally considered personal privileges of the debtor. See Pappas v. Capps, 263 P. 411, 411 (Colo. 1928) (considering automobile exemption); Wyman v. Gay, 37 A. 325, 326 (Me. 1897) (addressing exemption of certain chattels); Currier v. Sutherland, 54 N.H. 475, 486 (1874) (recognizing that "[t]he exemption of a homestead from attachment or levy is a personal privilege which the law gives to the owner"). Other jurisdictions have concluded that "[o]ne has a right to waive an exemption in his own favor unless he also holds it for the benefit of others or unless such waiver is against public policy or some constitutional or statutory restriction." In re Kline's Estate, 24 N.W.2d 481, 483 (Iowa 1946) (concluding widow waived deceased husband's exemption for automobile by selling vehicle and converting asset into nonexempt property); see also 31 Am. Jur. 2d Exemptions § 277 (2012) (noting that, "apart from an

5

attempt to do so by executory agreement," a debtor "has the option to claim or waive or may be estopped to assert" an exemption unless "it would be contrary to public policy").

Although, generally, statutory rights may be waived, the legislature has the power to limit, or even prohibit such waivers. See, e.g., RSA 275:50 (2010) (prohibiting waiver of statutory right to payment of wages, except as provided elsewhere in the statute); RSA 540:28 (2007) (declaring any waiver by tenant of rights under RSA chapter 540 to "be null and void"). Nothing in RSA chapter 480, however, expressly prohibits a waiver of the homestead right. Further, limited waivers of the homestead right are specifically provided for under other statutory provisions. See RSA 477:44, IV (2013) (contemplating waiver of homestead right with respect to a security interest in manufactured housing); RSA 480:5-a (providing approach for conveying or encumbering the homestead right); RSA 560:14 (2007) (allowing waiver of homestead right after the right vests in surviving spouse upon the owner-spouse's death); RSA 560:15, :16 (2007) (allowing waiver of homestead right before marriage). The language of the homestead right statute is also instructive. It provides that "[e]very person is entitled to $100,000 worth of his or her homestead, or of his or her interest therein, as a homestead." RSA 480:1 (emphasis added). Thus, the statute casts the homestead right as a personal privilege, which the homeowner and spouse are entitled to exercise. See Reed v. Union Bank of Winchester, 70 Va. (29 Gratt.) 719, 724-27 (1878) (concluding that waiver of exemption was permitted under Virginia constitution).

Therefore, we hold that homestead rights, like other statutory rights, may be waived by the holder of the right, unless such a waiver would be against public policy or some constitutional or statutory restriction. See Marine Credit Union v. Detlefson-Delano, 830 N.W.2d 859, 865 (Minn. 2013) (recognizing that the Minnesota Supreme Court has "said that homestead rights may be waived"). However, given the protective purpose of the homestead right, we further hold that there is a presumption against such a waiver, and a party may waive the homestead right broadly, as was the case here, "only by an act which evidences an unequivocal intention to do so." Id. (quotation omitted). Of course, compliance with RSA 480:5-a, which allows for conveyance or encumbrance of the homestead right by deed, obviates the need for proof of such an unequivocal intention. See Verdolino, 12 F. Supp. 2d at 206; Perley, 76 N.H. at 25-26. Thus, if a mortgage document is signed by both spouses, "with the formalities required for the conveyance of land," no further evidence of waiver is required. RSA 480:5-a.

Whether the husband waived his homestead right here turns on the language of the 2001 affidavit and the circumstances surrounding its filing. In the 2001 affidavit, the husband states: "[T]hrough accident, inadvertence or mistake, the [1991] deed did not state that I released my homestead rights. This affidavit is given to correct said omission." Thus, the document expressly

6

conveys the husband's unequivocal intention to waive his homestead right with respect to the 1991 conveyance to his wife.

Because we have concluded that a waiver is permissible under the homestead right statute, and the plaintiffs have not argued that this waiver violated any other statutory or constitutional provision, we next consider whether this waiver violates public policy. Historically, we have been protective of the homestead right when an owner-spouse has attempted to relinquish the right without the consent of the non-owner spouse. See, e.g., Atkinson v. Atkinson, 37 N.H. 434, 436 (1859) (recognizing wife's homestead right over petitionee's claim of ownership through deed executed only by the husband, notwithstanding wife's absence from the homestead, because "she was compelled by ill treatment to abandon her husband"). Our solicitude reflects the fact that the homestead laws were primarily enacted for the protection of the non-owner spouse and dependent children. See Meyer Bros. Drug Co. v. Bybee, 78 S.W. 579, 584 (Mo. 1904). Here, the non-owner spouse expressly relinquished the statutory protections under circumstances that bear no indicia of coercion, fraud, economic abuse, or other misconduct by the wife. Thus, we do not conclude that the waiver, in and of itself, violates the policy underlying the homestead right.

Further, although the trial court found that the 2001 affidavit was executed at the request of the mortgagee, the record is unclear as to which mortgagee requested the affidavit. Moreover, the plaintiffs do not allege that the 2001 affidavit was coerced or that the 2001 mortgage was conditioned upon the husband relinquishing all future claims to a homestead exemption. We, consequently, conclude that the affidavit waiver in this case did not violate the policy underlying the homestead right.

Accordingly, we conclude that the husband effectively waived his homestead right by executing the 2001 affidavit, and that he no longer had a right that he could assert against future creditors. Because the husband did not have a homestead right in the property when the wife executed the 2006 mortgage, the mortgage deed was not required to be signed by the husband in order to comply with RSA 480:5-a and to be a "charge thereon according to law." RSA 480:4; see Walbridge v. Estate of Beaudoin, 163 N.H. 804, 806 (2012). We, therefore, hold that the husband's waiver of his homestead right was effective as to the 2006 mortgage, and that the trial court did not err by concluding "that any homestead rights possessed by [the husband are] subordinate to the mortgage held by [the bank]."

IV.    Res Judicata and Collateral Estoppel

The plaintiffs next argue that res judicata and collateral estoppel prevent the bank from foreclosing on the property due to what they assert is the preclusive effect of the bankruptcy court's order confirming the wife's Chapter

13 plan.  However, in their motion for summary judgment, the plaintiffs argued to the trial court that the bank should be "judicially estopped from asserting an alternate position from that taken by the [wife] in her earlier bankruptcy case." (Emphasis added.)  But see In re Zachary G., 159 N.H. 146, 152 (2009) (recognizing that judicial estoppel "protects judicial integrity by preventing a party from prevailing in one phase of a case using one argument and then relying upon a contradictory argument to prevail in another phase" (quotation and brackets omitted)).  The plaintiffs made no argument based upon res judicata or collateral estoppel.  Although the trial court observed that the bankruptcy court's decision on the bank's motion for relief from stay could have no preclusive effect, it rejected the plaintiffs' judicial estoppel argument – the only argument asserted by the plaintiffs.  The plaintiffs do not appeal the trial court's ruling on their judicial estoppel argument.  Because the plaintiffs did not argue res judicata or collateral estoppel before the trial court, and never filed a motion for reconsideration addressing the trial court's observation regarding the lack of preclusive effect of the bankruptcy court's decision, we conclude that this issue was not properly preserved for appeal.  See Singer Asset Finance Co. v. Wyner, 156 N.H. 468, 472 (2007) ("It is a long-standing rule that parties may not have judicial review of matters not raised in the forum of trial." (quotation omitted)); see also Gray v. Kelly, 161 N.H. 160, 164 (2010) (stating that both res judicata and collateral estoppel are affirmative defenses); Super. Ct. Civ. R. 9(d) (recognizing that failure to plead affirmative defenses constitutes waiver).

Moreover, even assuming that the plaintiffs preserved this argument for appeal, they have not persuaded us that res judicata or collateral estoppel bars the bank's challenge to the husband's claimed homestead right.  Both res judicata and collateral estoppel rest upon the principle that, in order for a prior decision to be given preclusive effect against a party as to a particular claim, that party must first have had a full and fair opportunity to litigate the claim. See Kremer v. Chemical Construction Corp., 456 U.S. 461, 480-81 & n.22 (1982); Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 758 (1st Cir. 1994).  When determining whether a party had a full and fair opportunity to litigate the claim in the first proceeding, courts consider the party's incentive to litigate.  See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331-32 (1979) (noting, among other factors, that "petitioners had every incentive to litigate the SEC lawsuit fully and vigorously" and concluding that they "received a 'full and fair' opportunity to litigate their claims"); S.E.C. v. Monarch Funding Corp., 192 F.3d 295, 305 (2d Cir. 1999) (considering incentive to litigate with respect to collateral estoppel in sentencing hearings); Restatement (Second) of Judgments § 28 (1982) (recognizing that inadequate "opportunity or incentive to obtain a full and fair adjudication in the initial action" is an exception to issue preclusion).

Here, the wife's amended bankruptcy schedules listed as a "claim" the husband's homestead right.  This right, however, was based only upon an

"inchoate and imperfect right" in the property. Cross v. Weare, 62 N.H. 125, 126 (1882) (quotation omitted). Although the wife's amended Chapter 13 plan included a plan to cure her home mortgage arrearage and stated that "[a]ll secured creditors shall retain the liens securing their claims unless otherwise stated," the plan made no mention of the husband's homestead right. Therefore, the husband's homestead right would only emerge as an issue for the bank if the wife defaulted on the terms of her Chapter 13 plan and if the husband still resided with his wife in the property at the time of default. Under the circumstances, we cannot conclude that the mere possibility of a post-confirmation default provided the bank sufficient incentive to litigate the husband's homestead claim in the wife's bankruptcy proceeding. See In re Carvalho, 335 F.3d 45, 50 (1st Cir. 2003) ("A debtor's post-confirmation default, like many other post-confirmation events, does not come within the preclusive reach of a confirmed plan."); cf. Costanzo v. Harris, 427 P.2d 963, 967 (Wash. 1967) (declining to require judgment creditor to challenge validity of homestead claim before the end of the redemption period because the creditor "has no way to anticipate whether the judgment debtor will choose to redeem"). We, therefore, decline to apply res judicata or collateral estoppel to bar the bank's challenge to the husband's homestead right.

V.    Misstatement in 2006 Mortgage Document

The plaintiffs also argue that the trial court erred by concluding that the misstatement in the 2006 mortgage, which referenced the wife as a single woman, was without independent legal significance. The trial court found that the reference to the wife as a single woman was an "erroneous representation" and concluded that "the probability is that there was a scrivener's error with respect to her marital status," which neither she nor the bank identified. The plaintiffs do not dispute these findings; rather, they argue that enforcing the 2006 mortgage with the error is inconsistent "with the statutory scheme requiring the mortgagor and his/her spouse, in order to properly encumber the homestead right, to execute the [encumbrance] of a homestead with the formalities of a land conveyance." See RSA 480:5-a. They further assert that the description of the wife's marital status in the 2006 mortgage document "is not without relevance" because "[r]eferencing the [wife] simply as 'a single woman' presumes that a bona fide purchaser or future mortgagees need look no further, perhaps to their peril." We are not persuaded.

RSA 480:5-a requires that, to convey or encumber the homestead right, a deed must be executed "with the formalities required for the conveyance of land." The statutory formalities required for the conveyance of land include execution, acknowledgement, and recording, see RSA 477:1, :3, :3-a (2013), as well as compliance with various notification and disclosure requirements, see RSA 477:4-a to :4-h (2013). RSA chapter 477, which sets forth the requirements for conveyances of real estate, does not contain a provision invalidating deeds or mortgages that contain clerical errors, and we will not

9

read such a requirement into the statute.  See Landry v. Landry, 154 N.H. 785, 788 (2007).  Accordingly, we find no reason to conclude that the erroneous reference to the wife's marital status has any legal significance with respect to whether the 2006 mortgage complied with RSA 480:5-a or to the bank's ability to foreclose on the property.

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.