NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
No. 2018-0047


WAYNE SABATO

v.

FEDERAL NATIONAL MORTGAGE ASSOCIATION

Argued: January 10, 2019
Opinion Issued: May 3, 2019


Smith-Weiss Shepard, P.C., of Nashua (Robert M. Shepard and Tanya L. Spony on the brief, and Mr. Shepard orally), for the plaintiff.


Flagg Law, PLLC, of Portsmouth (Jonathan M. Flagg on the brief and orally), for the defendant.


HICKS, J. The plaintiff, Wayne Sabato, appeals, and the defendant, Federal National Mortgage Association (FNMA), cross-appeals, orders of the Superior Court (Temple, J.) in this action brought by the plaintiff to establish his homestead right in the subject property. We affirm.

The following facts were recited by the trial court in its orders. In 2001, the plaintiff's wife, Cheryl A. Sabato, acquired the subject property in Pelham (the property). She took title by a warranty deed that acknowledged she was a "married person," and granted a purchase money mortgage to a party not identified in the record (the original mortgage), which the plaintiff did not sign. Both Cheryl and the plaintiff have resided at the property since 2001.

In January 2002, Cheryl refinanced the original mortgage, executing a new mortgage securing the amount of $173,250 to HomeVest Mortgage Corporation (the first mortgage). The plaintiff did not sign the first mortgage, which was immediately assigned to CitiMortgage, Inc. The original mortgage was discharged approximately four months later and is not at issue in this appeal. All of the foregoing transactions were recorded in the registry of deeds.

In 2005, Cheryl granted a mortgage to National City Bank to secure a home equity line of credit with a maximum principal amount of $65,000 (the second mortgage). Both Cheryl and the plaintiff signed the second mortgage. National City Bank was acquired by PNC Bank National Association, which assigned the second mortgage to Situs Investments, LLC (Situs) in 2013. Meanwhile, in 2011, the first mortgage was assigned by CitiMortgage, Inc. to FNMA.

In 2014, Situs foreclosed its mortgage, and purchased the property at the foreclosure auction for $64,872.01, taking title subject to the first mortgage.[1] Situs then sold its interest in the property to FNMA. Accordingly, FNMA now holds title to the property as well as the first mortgage thereon.

In 2016, FNMA notified the Sabatos that they might be evicted from the property. The plaintiff then filed the instant action seeking to establish his homestead right in the property. Both parties moved for summary judgment. The plaintiff contended that foreclosure of the second mortgage did not affect his homestead right because he had not waived that right in the first mortgage. FNMA argued that, because the plaintiff waived his homestead interest in the second mortgage, he could not now assert any homestead right.

The court denied both motions, concluding that the summary judgment record was insufficient to decide the issues before it as a matter of law. Both parties moved for reconsideration, supplying additional evidence.

Based upon the new evidence and concessions by FNMA at the motions hearing, the trial court denied FNMA's motion but granted the plaintiff's motion in part. The court concluded that "prior to the execution of the second mortgage, the plaintiff had an unencumbered homestead right." The court also concluded that, "[u]nder settled New Hampshire law, the plaintiff's signature was sufficient to waive his homestead right relative to the second mortgage." That waiver, the court determined, was "only to the extent necessary to enforce the second mortgage."

---

[1] The issue of whether Situs, as foreclosing mortgagee, exercised due diligence to obtain a fair price at auction is not before us. See Murphy v. Financial Development Corp., 126 N.H. 536, 541 (1985).

The court then ruled:

> In this case, the second mortgage at issue was a home equity line of credit with a maximum principal balance of $65,000, and the foreclosure auction winner paid $64,872.01 as consideration for the foreclosure deed. Thus, assuming that the $120,000 statutory exemption applies, it appears that some portion of the plaintiff's homestead exemption still exists and must be set-off before FNMA owns the property free and clear. . . . The Court finds that the plaintiff is entitled to $120,000 less the amount owed on the note secured by the second mortgage at the time of the foreclosure sale. In the event FNMA seeks to partition the property instead of paying this amount, FNMA may request a hearing on this issue.[2]

(Footnotes omitted.) Subsequent motions for reconsideration by both parties were denied, and both parties now seek appellate review.

"In reviewing the trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in its capacity as the nonmoving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law." Maroun v. Deutsche Bank Nat'l Trust Co., 167 N.H. 220, 224-25 (2014) (quotation omitted). "If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment." Id. at 225 (quotation omitted). We review both the trial court's application of the law to the facts and its statutory interpretation de novo. Polonsky v. Town of Bedford, 171 N.H. 89, 93 (2018).

The plaintiff contends that the trial court erred in ruling that his homestead exemption must be reduced by the amount outstanding on the second mortgage. He argues that the second mortgage "does not reduce or eliminate [his] homestead exemption since [he] did not waive his homestead right in the First Mortgage, which remains in full force and effect. The Second Mortgage is subject to, and subordinate to, the First Mortgage and the outstanding homestead right of [the plaintiff]."

---

[2] The trial court made clear in a footnote that its assumption "that the $120,000 statutory exemption applies" related to the applicable amount and was not an assumption as to whether the exemption itself applies. That amount was increased from $100,000 to $120,000 by statutory amendment in 2015. See Laws 2015, 57:1. Neither party has asked us to determine whether the current or former amount is applicable, and both treat $120,000 as the operative amount. Accordingly, we assume without deciding that the $120,000 exemption amount applies.

3

FNMA also contends that the trial court erred, but in the opposite direction. It asserts that "the homestead exemption is $0.00 because the homestead was completely waived in the mortgage which is the subject of this appeal and the other mortgage has nothing to do with this matter." FNMA, therefore, contends that the trial court erred in ruling that to obtain title free and clear of the plaintiff's homestead right, FNMA must pay him the difference between $120,000 and the amount due on the second mortgage.

In order to resolve the issues on appeal, we must construe the statutory homestead exemption.

> The interpretation and application of statutes present questions of law, which we review de novo. In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. When examining the language of a statute, we ascribe the plain and ordinary meaning to the words used. We do not construe statutes in isolation; instead, we attempt to do so in harmony with the overall statutory scheme.

Maroun, 167 N.H. at 225 (citations omitted). "Statutory homestead protections are universally held to be liberally construed to achieve their public policy objective." Id.

The homestead exemption statute, RSA chapter 480 (2013 & Supp. 2018), provides that "[e]very person is entitled to $120,000 worth of his or her homestead, or of his or her interest therein, as a homestead." RSA 480:1 (Supp. 2018). "The statutory protection of the homestead right" applies not only to the homeowner, but "also extends to spouses who occupy the homestead but are not title owners of the property." Maroun, 167 N.H. at 226. The homestead statute further provides that "[t]he homestead right is exempt from attachment during its continuance from levy or sale on execution, and from liability to be encumbered or taken for the payment of debts, except in the . . . cases" listed in paragraphs I through V of that section. RSA 480:4 (Supp. 2018). The instant case involves paragraph III, which provides an exception "[i]n the enforcement of mortgages which are made a charge thereon according to law." RSA 480:4, III. That paragraph, in turn, implicates RSA 480:5-a, which provides that "[n]o deed shall convey or encumber the homestead right, except a mortgage made at the time of purchase to secure payment of the purchase money, unless it is executed by the owner and wife or husband, if any, with the formalities required for the conveyance of land." RSA 480:5-a (2013).

To address the parties' arguments on appeal, we must examine the effect of the plaintiff's waiver of homestead in the second mortgage, as well as his

lack of waiver in the first. We rely upon our own case law and cite cases from other jurisdictions to the extent they do not conflict with New Hampshire law.

"The general rule regarding priority among competing mortgages, in the absence of a statutory provision to the contrary, is 'prior in tempore, potior in jure (first in time, superior in right).' That is, a mortgage acquired first takes priority over subsequent mortgages on the same property." Leroux v. Bank of N.H., 132 N.H. 547, 549 (1989) (quoting 55 Am. Jur. 2d Mortgages § 323 (1971)) (citation omitted). Thus, ordinarily, the first mortgage given to HomeVest Mortgage Corporation and now held by FNMA would have had complete priority over the later second mortgage given to National City Bank and assigned to Situs. Here, because the plaintiff did not sign the first mortgage, which was not made at the time of purchase, that mortgage did not comply with RSA 480:5-a, and, therefore, did not convey or encumber his homestead interest in the property. See Maroun, 167 N.H. at 226-27. Thus, upon foreclosure, the plaintiff's homestead right had priority over the first mortgage. See Manchester Sav. &c. Ass'n v. Emery-Waterhouse, 102 N.H. 233, 238 (1959) (because debtor's "homestead right [was] exempt as against the attaching creditors," attaching creditors would be entitled to their share of foreclosure proceeds "less the value of his homestead right").

The plaintiff concedes, however, that he signed the second mortgage as "'husband of Cheryl A. Sabato.'" Accordingly, the trial court ruled, and we affirm, that he waived his homestead right as to the second mortgage. See Maroun, 167 N.H. at 228 (holding that "homestead rights, like other statutory rights, may be waived by the holder of the right, unless such a waiver would be against public policy or some constitutional or statutory restriction"); RSA 480:4, III, :5-a. That waiver made the value of the plaintiff's homestead right available to Situs, by "levy or sale on execution," RSA 480:4, to satisfy the plaintiff's indebtedness to it. See Walpole Savings Bank v. French, 105 N.H. 407, 408, 409 (1964) (holder of mortgage given by both husband and wife on property they jointly owned foreclosed and satisfied its mortgage from "the full value of" the homestead right, over which its claim was "paramount"). Accordingly, the waiver gave Situs's second mortgage priority over the first mortgage up to the value of the plaintiff's homestead right ($120,000). See Browning et al. v. Harris et al., 99 Ill. 456, 460, 462 (1881) (noting that in a prior case the court held that "where the owner of a homestead had executed three mortgages upon the homestead premises, the first of which contained no sufficient waiver or release of the right of homestead, and the other two did, that the latter had priority over the first to the extent of [the homestead right, which was then] $1000"). When Situs foreclosed its second mortgage, it stepped into first position up to a maximum of $120,000 because it, unlike the first mortgagee, had access to the value of the homestead right, and that right, as previously noted, had priority over the first mortgage. See Acadian Bank v. Foret, 602 So. 2d 1097, 1098 (La. Ct. App. 1992) (noting that "the amount of the homestead exemption is . . . reserved from the sale proceeds for the

homeowner, or in his stead, the highest ranking mortgag[ee] whose mortgage contains a waiver of the homestead exemption"); Hess v. Eselin, 194 N.W. 469, 470-71 (Neb. 1923) (where debtor gave mortgage to bank after judgment creditor levied upon the subject property, but debtor had waived homestead in the mortgage, "the mortgage simply [took] the place of the homestead interest" upon sheriff's sale).

Because it is reasonable to assume that Situs did not bid more than the amount it was owed, we will assume, for purposes of analysis only, that its bid of $64,872.01 satisfied the indebtedness under the second mortgage note. Thus, as in French, "the mortgage was satisfied without resort to the full value of [the homestead] right." French, 105 N.H. at 409. Had the property sold for more than the indebtedness under the second mortgage note, the surplus proceeds up to the remaining balance of the plaintiff's homestead exemption would have been exempt from the first mortgage and payable to the plaintiff before FNMA, as holder of the first mortgage, received any proceeds. See id.; Shaver v. Williams, 87 Ill. 469, 473 (1877); Acadian Bank, 602 So. 2d at 1098. Here, however, there was no surplus, and we must, therefore, determine whether the balance of the plaintiff's homestead exemption remained as an interest in the property or was extinguished by the foreclosure sale.

Pursuant to RSA 479:26, upon the recording of the foreclosure deed and affidavit in compliance with paragraph I of that section, "title to the premises . . . pass[ed] to the purchaser free and clear of all interests and encumbrances which do not have priority over such mortgage." RSA 479:26, I, III (2013). As between the first and second mortgage, the first had priority; thus, the first mortgage was not extinguished by the foreclosure, and Situs took title subject to it. With respect to the second mortgage, the plaintiff's waiver of homestead allowed the second mortgage to encumber that right and take priority over it. The preliminary issue we must determine, then, is to what extent the second mortgage encumbered that right.

The trial court concluded, in a ruling challenged by FNMA on appeal, that "the plaintiff waived his homestead right only to the extent necessary to enforce the second mortgage." That ruling is consistent with language employed by courts in other jurisdictions. See In re Butler, 271 B.R. 807, 810 (Bankr. E.D. Tenn. 2001) (noting that "the Debtor, as permitted by Tennessee law, waived her entitlement to claim her homestead exemption to the extent of the amount of the mortgages encumbering the Residence at the commencement of her bankruptcy case"); Virgin v. Virgin, 91 Ill. App. 188, 204 (App. Ct. 1900) (noting that when the appellant joined her husband in executing nine mortgages on the subject property, "she thereby released . . . her homestead estate therein, to the extent of the liens created thereby"); Gordon v. Deavitt, 78 A. 113, 115-16 (Vt. 1910) (citing Michigan case for proposition that "the execution of a mortgage upon the homestead by husband and wife operates to release the homestead right only to the extent necessary to

satisfy the mortgage, and that the law will not construe the mortgage into an agreement to carry an increased liability"). Moreover, the ruling is logically consistent with <u>French</u>'s holding that following a foreclosure sale that satisfied the mortgage "without resort to the full value of" the homestead exemption, the debtor and his wife "each retained a homestead right" in surplus proceeds. <u>French</u>, 105 N.H. at 409. Accordingly we affirm the trial court's ruling that the plaintiff's homestead waiver extended only so far as necessary to enforce the second mortgage.

Conversely, we cannot conclude that, except to the extent necessary to enforce the second mortgage, the plaintiff's homestead right could be considered an "interest[ or] encumbrance[] which do[es] not have priority over such mortgage." RSA 479:26, III. In other words, any portion of the exemption left after satisfying the second mortgage, which continues to exist in either the surplus, <u>French</u>, 105 N.H. at 409, or, we now hold, in the property, is not subordinate to the mortgage and is not extinguished by the foreclosure. In so holding, we necessarily reject both parties' positions as to the value of the plaintiff's present homestead interest and agree with the trial court that he retains as a homestead interest the difference between $120,000 and the amount owed on the second mortgage note at the time of the foreclosure sale.

The plaintiff contends, however, that reducing his homestead right by the amount due on the second mortgage note contravenes our precedent that a homestead waiver in one mortgage "cannot be interpreted to act upon any other conveyance or encumbrance." <u>Maroun</u>, 167 N.H. at 227. We find no conflict. The waiver of the plaintiff's homestead exemption in the second mortgage did not impute a waiver into the first mortgage; rather, the waiver in the second mortgage merely gave the second mortgagee the right to step into the plaintiff's shoes with respect to <u>his</u> priority over the first mortgage up to the value of the homestead exemption. See <u>Hess</u>, 194 N.W. at 471.

The plaintiff also contends that because Situs took with notice of the lack of a homestead waiver in the first mortgage, "the conveyance of the home by [Situs] is subject to the [entire] outstanding homestead right." Situs's knowledge of the first mortgage's lack of homestead waiver does not change our analysis. Situs had no reason to seek to remedy the lack of waiver in the first mortgage as it would not improve its position.[3] The first mortgagee has no grounds for complaint; its mortgage was always subject to the homestead exemption, and it should make no difference whether the value of the exemption is claimed by the plaintiff, the second mortgagee, or both of them in part. See <u>id</u>.

Finally, the plaintiff, having waived his homestead right in the second mortgage, has no grounds to complain that the second mortgagee has availed

---

[3] In fact, given our holding here, it would weaken its position.

itself of the homestead to satisfy its mortgage and left him unable to assert his entire homestead exemption against the first mortgagee. The Louisiana Court of Appeal in Acadian Bank addressed a contention similar to the plaintiff's here. There, the first lien on the debtors' property was a judgment lien and the second was a mortgage in which they waived their homestead exemption. Acadian Bank, 602 So. 2d at 1047. Following foreclosure of the mortgage, the debtors argued that, because the judgment creditor ranked above the foreclosing mortgagee, "the homestead exemption in the amount of $15,000 should be deducted from the sale proceeds and given to them before [the judgment creditor's claim] is satisfied." Id. at 1098. The court rejected the argument:

> In the case sub judice, the claim against the homestead exemption is a waiver of the entire exemption in favor of [the mortgagee], therefore the entire amount of the homestead exemption, $15,000, goes to satisfy that claim.
>
> There is no provision in the law to allow the debtor to defeat the waiver of the homestead exemption simply because the creditor with the homestead exemption waiver ranks below a higher ranking creditor which has no homestead waiver. This argument has no merit.

Id. at 1099. For the foregoing reasons, we reject the plaintiff's challenge to the trial court's decision.

In its challenge to the trial court's orders, FNMA argues that no New Hampshire court has ever "required the successful bidder at auction to then meet with the former owners, or anyone having any interest in the property, and compensate them for their interest, unless there is a bid in excess of the total debt of the mortgage foreclosed on," and there is no such excess bid in this case. Our decision here, however, does nothing more than recognize that the remainder of the plaintiff's homestead interest continues to exist in the property and that in order to clear that interest from its title, FNMA must either, as the trial court ruled, pay the plaintiff its value or partition the property. Cf. Boissonnault v. Savage, 137 N.H. 229, 230, 232-33 (1993) (noting that "RSA 480:3-a does not entitle the [wife] to occupy the . . . premises and preclude [a judgment creditor of her husband] from seeking partition, at which time the homestead right may be accommodated"). The foreclosure here was expressly subject to the first mortgage on the property, which any purchaser at auction would have had to pay off and discharge in order to obtain clear title. The plaintiff's remainder homestead interest is not dissimilar.

Nevertheless, FNMA contends that if we affirm, "no one would lend in New Hampshire because they would not be able to liquidate at a foreclosure

auction." FNMA argues, essentially, that buyers would not bid at auction if they had to contend with the possibility of homestead rights that would have to be bought out post-foreclosure. We are not persuaded. A successful bidder would have to pay off any superior interest in any case.

Finally, FNMA argues that "[w]hen Plaintiff signed the second mortgage, he in fact DEEDED his interest in the property to [FNMA's] predecessor with warranty covenants" and, therefore, "he must now warrant and defend the title that [FNMA] holds, even to the extent of discharging any claim to title to the property, be it homestead or otherwise." We disagree. Notwithstanding that New Hampshire is a "title theory" state, see Land America Commonwealth Title Ins. Co. v. Kolozetski, 159 N.H. 689, 692 (2010), the plaintiff's signing of the second mortgage did not "deed" anything to the second mortgagee as the plaintiff did not own the property and had no title or estate to convey. We long ago recognized that "[t]he homestead right is merely an inchoate right, which is not assignable until the homestead is set out and assigned in specific property. It then becomes a vested estate." Lake v. Page, 63 N.H. 318, 319 (1885); see RSA 480:8-a (2013) (setting forth procedure by which the superior court "may appoint appraisers and cause the homestead right to be set off, and a record of the proceedings being made in the registry of deeds, the right shall be established as against all persons"); see also Maroun, 167 N.H. at 228 (noting that RSA 480:1 "casts the homestead right as a personal privilege, which the homeowner and spouse are entitled to exercise"). The plaintiff's signature on the second mortgage merely waived his entitlement to exercise his homestead right against the second mortgage. Maroun, 167 N.H. at 228. For all of the foregoing reasons, we reject both parties' challenges to the trial court's orders and affirm.

Affirmed.

LYNN, C.J., and BASSETT and HANTZ MARCONI, JJ., concurred.